Totten, J.,
delivered the opinion of the court.
The bill is filed by the justices of the county court of Maury who sue for themselves and the citizens of said county : against the justices of the county court of Lewis and the sheriff and collector of said county, the parties representing the rights of said counties respectively in the matter in issue.
The bill seeks to assert and maintain the right of Maury county to the territory which has been taken from it, in the formation of the new county of Lewis.
A preliminary question is made in argument, and that is, that the proceeding is bad for want of proper parties, that the suit should be in the name of the county of Maury, against the county of Lewis. This objection, if it have any force in it, is matter in abatement, and no exception of the kind is taken in the pleading. The defendants’ answer is in bar of course, and goes alone to the merits. Angel & A. on Cor. 510, 514; 1 Kyd, 228.
In substance and effect, this suit is brought by the county of Maury against the county of Lewis, and the matter in abatement insisted upon, if of any validity in itself, must be *240 considered as waived by a defence upon the merits. We may farther observe, that a corporation is incapable of doing a personal act in its collective capacity; 1 Kyd 225; it can only act and be acted upon through the medium of its agents, who represent its corporate rights and powers. Now a county is a public corporation, created by the government for political purposes, and invested with subordinate legislative powers, to be exercised for local purposes connected with the public good, and such powers are, in general, subject to the control of the Legislature of the State. 2 Kent Com. 275.
The county court, or the justices composing that court, represent the civil and political power of the county, its rights and obligations. It is through this medium, therefore, that the county in its municipal character, as a corporation, may act or be acted upon. There is no other court or officer known in its organization, that can or should representit. We are satisfied, therefore, that this suit, so far as relates to parties, was formally and properly instituted.
It appears that the Legislature by act passed December, 1843, established Lewis county, “ to be composed of fractions taken from the counties of Maury, Lawrence, Wayne and Hickman.”
Its boundary begins “ on the south bank of Duck River, at a point twelve miles, on a straight line, west from Columbia, and running in a south direction, leaving Columbia twelve miles to the east, to the turnpike leading from Mount Pleasant to the Tennessee River,” &c. The 3d section appoints commissioners, with authority to employ surveyors, to designate the boundaries of Lewis county, and to make actual survey of the several counties of parts whereof the new county was to consist. The act then provides, that “ if upon such survey there shall be territory and population sufficient to meet the requirements of the Constitution, without infringing upon the constitutional territory or population of either of the coun *241 ties, from which said county of Lewis is to be composed, then said county of Lewis is hereby established.”
The commissioners caused the boundaries of Lewis to be designated and marked, but it does not appear that they made any actual survey of Maury (we make no reference to the other counties,) to ascertain and determine the effect of this new boundary, upon the constitutional limits and rights of Maury. The county of Lewis is west of the county of Maury, and the eastern boundary of Lewis, as run and marked by said commissioners, includes a considerable portion of the territory and population of Maury, comprising Districts Nos. 15 and 16 and parts of 12 and 13. The bill avers that the territory thus taken from Maury includes an area of 180 square miles, though an estimate made in the case states it at 137 square miles.
The commissioners, assuming that the conditions of the act had been complied with in the early part of 1844, caused the said county of Lewis to be organized, by the election of proper officers for the county, and the establishment of its seat of justice; and it has continued to exercise the rights and functions of a county to the present time.
In 1848, the county court of Maury caused a survey to be made of said county, and in the course of this litigation, another survey thereof was made ; from all of which it appears that the eastern boundary of Lewis, as run and marked by said commissioners, approaches within the distance of twelve miles of Columbia, the county seat of Maury, and that it reduces the area of Maury below six hundred and twenty-five square miles, its constitutional limits.
That is, the line on a beech marked L. C., near Goodloe’s, is eleven and a quarter miles and fifteen poles from Columbia, and the area of Maury county is reduced to 533 78-100 square miles — another statement makes the present area 537 square *242 miles, thus reducing the county below its constitutional limits about 87 square miles.
The bill alledges and the answer admits, that the county of Lewis claims and assumes the right to exercise jurisdiction in that portion of Maury detached from her ancient limits by the line aforesaid, that she has assessed and is proceeding to collect taxes of the people residing in that portion of the county, and prays in this respect, that she be enjoined from the exercise of such jurisdiction, and that the collector of said taxes pay the same into the hands of a receiver, to be appointed by the court. And the bill finally prays, that the pretended boundary, made to the prejudice of said county of Maury, be declared null and void, that she be restored to her ancient limits, and that the officers of the county of Lewis be enjoined from exercising any jurisdiction within the said limits thus claimed by the county of Maury.
The Constitution, article 10, sec. 4, provides that new counties may be established by the Legislature, to consist of not less then three hundred and fifty square miles, and which shall contain a population of four hundred and fifty qualified voters. No line of such county shall approach the court house of any old county from which it may be taken, nearer than twelve miles. Nor shall said old county be reduced to less than six hundred and twenty-five square miles.” Such are the restrictions and limitations imposed by the organic law of the State, upon the legislative power and discretion, in this respect.
It will not be denied, but that an exercise of power by the Legislature in contravention of this organic law, will be null and void, and that no rights can originate and exist, under such assumed and illegal exercise of power.
But the act in question has express reference to these constitutional checks. It required that surveys be made of the several counties, parts whereof were to compose the county of Lewis, and the boundaries of Lewis were likewise to be sur *243 veyed and ascertained. It then provides, that if there be territory and population sufficient to meet the requirements of the Constitution, without infringing upon the constitutional rights of the older counties, then and in that case only, the county of Lewis was to be organized and established. The act does not, therefore, infringe any of said provisions in the Constitution. If there was not territory enough upon actual survey, or population enough, the county was not to be organized and established. ' Whether the county could be legally established depended upon these facts, and these were to be ascertained by the commissioners appointed for that purpose under the act. The commissioners having designated the limits of the new county, assumed that said prerequisites did exist, and had been complied with. That is, that the county of Lewis contained 350 square miles and 450 qualified voters; that its limits did not approach the courthouse of the older counties nearer than twelve miles, and that those counties had not been reduced to less than 625 square miles.
But, in point of fact, this assumption was erroneous, as relates to the county of Maury, in the two particulars before stated. The line as marked by the commissioners, did approach within twelve miles of the court house of Maury, and the area of Maury was thereby reduced to less than 625 square miles; that is, it was reduced to about 537 square miles, and was thus deprived of a considerable portion of its territory and population, to which it had a constitutional right.
This was occasioned by an error, in fact, on the part of the commissioners, and by their failure to comply with the provisions of the act under which they were appointed.
It is now argued, in defence, that a court of chancery has no jurisdiction to relieve in such case; because the act of the Legislature is consummated in the establishment of the new county; that the jurisdiction of the court in this respect is preventive only, and that it cannot undo the act of the Legis *244 lature, after it has been fully carried into operation. The case of Ford vs. Farmer, 9 Hum. R. 152; Bradley vs. The Commissioners of Powel, 2 Hum. R. 248; Gotcher vs. Burrows, 9 Hum. R. 585, are referred to.
In Bradley vs. The Commissioners, the bill was filed to enjoin them from proceeding to organize the county of Powel, and the question was, whether the commissioners could be prohibited by the decree of a court of chancery, from organizing the county contrary to the provisions of the Constitution, and the jurisdiction of the court for such purpose, was fully asserted and maintained.
It was held that the act establishing the county of Powel, in disregard of constitutional restrictions, was a void exercise of power, and that any attempt to carry it into effect might be arrested by the injunctive power of the court. In the principle which ruled in that case, we fully concur.
In Ford vs. Farmer and others, the bill was filed against the commissioners of the new county of Hancock, and its object was to annul and abolish the said county, upon the ground that it had been established and organized contrary to constitutional prohibitions. And the court say, “ That as long as the organization of the county is in fieri, the court has. power over the commissioners appointed by the invalid act establishing it, and may prohibit them from the exercise of the authority illegally imposed upon them by it. But the moment the power is exercised, and the county organized iii pursuance of the statute, that moment the connexion of the commissioners with the transaction ceases — they become, if the expression be legitimate, fundo officio, and the county becomes, under the statute, a political corporation of the State, and a court of chancery has not power to inquire into the validity of the act, and, as we apprehend, a court of law neither/’
We may observe upon this case, that the commissioners? having performed their functions under the act, and cease to *245 have any connection with the transaction, were not pi'oper defendants in a suit brought to abrogate and abolish the county, on the ground that it had been established and organized contrary to constitutional prohibitions. Any decree or injunction against them, in such case, would have been merely nugatory.
But the court say, that the county under the statute becomes a political corporation of the State, and a court of chancery has not power to enquire into the validity of the act, and as we apprehend, a court of law neither.
It is not necessary in the case now before us, that we question the correctness of this principle. It is true, that in one aspect of the case, the bill seeks to abrogate and abolish the county of Lewis, but we have not considered it in that view, nor assumed in this opinion, the facts relied upon for such decree.
We regard it as the suit of Maury county, seeking relief present and preventive, for injuries done and impending to her constitutional rights.
In giving relief to the county of Maury, we do not abrogate and annul the county of Lewis. We do not consider whether is has been or may be constitutionally established — whether there is territory enough or population enough. We onlysay whatit very evident, that its boundary as designated by the commissioners, trenches upon the vested and constitutional rights of Maury. Whether it be free from constitutional objections in other respects, we do not determine. The act to establish it, is in its terms and on its face, free from any such exception ; but the commissioners in designating the boundary, not conforming to the directions of the act, have invaded the county of Maury and attempted to take from it a portion of its territory and population, and to include them within the county of Lewis.
The county of Lewis has taken possession of this territory, *246 has exercised jurisdiction over it, and claims the right to continue that possession and jurisdiction.
The question, therefore, is between the counties of Maury and Lewis, as to the right to the disputed territory. In determining this question, we do not necessarily determine that the county of Lewis has no constitutional existence. In this view of the case, the principle referred to, in Ford vs. Farmer, can have no application.
The case of Gotcher vs. Burrows was simply this: The county of Grundy being established under the act of 1844, ch. 204, the Legislature by a subsequent act, passed in 1846, and after the organization of Grundy county, attached a portion of the territory of Cofiee, including two civil districts, and annexed it to the county of Grundy,whereby the line of the latter county was made to approach within less than twelve miles of the county seat of Coffee. It was held that the act being in conflict with constitutional prohibitions, was inoperative and void.
Certainly, this case is not in conflict with the view we take of the case now before us.
If the act establishing the county of Lewis had designated the boundary in question, to be as it was run by the commissioners, there is no question, but that it would be considered as avoid exercise of power. Can the boundary, as erroneously designated by the commissioners, have any greater sanction or validity ?
If, upon any principle, such boundary may be held as valid, then there remains no check or limit to encroachment upon the older counties.
But regarding it as a void designation of boundary, the vested rights of Maury were not affected by it; but remain as if the boundary had not been made. It was the act of the commissioners of Lewis, in which Maury did not concur or assent.
The árgument in favor of an implied assent, is not supported *247 by the facts; to give it plausibility, it should appear that the county court of Maury was aware at the lime, that her constitutional rights were invaded.
In this state of the case, we have no question as to the jurisdiction of the court. Certainly, if there be any remedy, there is no adequate remedy at law; none has been indicated in the argument. An adequate and proper remedy for the injury complained of, involving as it does, the rights and interests of so many persons, requires that the rights of the parties be distinctly declared, and that thé county of Lewis be enjoined from any further invasion of the vested and constitutional rights of the county of Maury. A court of law has no such remedial power: it is exercised only by a court of chancery.
It was argued that the county of Maury has waived her rights by her acquiescence in the designated boundary. We do not think that the facts make such a case. It does not appear that she was aware of the invasion of her rights until a short time before the suit was instituted.
We think, therefore, that the plaintiff is entitled to the relief indicated; that the designated boundary is to be regarded as null and void; that the county of Maury is entitled to her original limits, as no boundary has been run for the county of Lewis, in conformity to the limitations and restrictions contained in the Constitution, and by which the county of Maury could be limited.
The county of Lewis will, therefore, be enjoined from exercising any jurisdiction within the said limits of Maury.
Decree of the chancery court reversed and a decree in conformity to this opinion.