MOORE *et ux. v.* LOVE.

(*Nashville*, December Term, 1936.)

Opinion filed August 10, 1937.

CHASE & NEEL, of Johnson City, for complainants.

COX, TAYLOR & EPPS and W. E. MILLER, all of Johnson City, for defendant.

FYKE FARMER and JOSEPH MARTIN, both of Nashville, and GEO. N. BARNES and THOMAS P. GORE, both of Johnson City, for petitioners.

FOWLER & FOWLER, of Knoxville, as *amici curiae* for petition.

Mack Evans, E. M. Johnston, Joe Allen, Oscar M. Fair, Jr., and C. Lee Richardson, all of Elizabethton, J. Fon Davis, T. H. Morris, Vines, Hawkins & Bryant, A. D. Hughes, Colin P. McKinney, Gladstone H. White, Guinn, Mitchell & Erwin, J. F. Bryant, and George M. Dunn, all of Johnson City, and R. M. May, of Jonesboro, *amici curiae,* respondents to petition.

Mr. Special Justice George H. Armistead, Jr., delivered the opinion of the Court.

The only question involved in this case at this time is a consideration of the constitutionality of chapter 97 of the Public Acts of 1937, which said act purports to make judges of courts of record incompetent to hear and determine cases in which lawyers are interested where there is blood relationship between such judges and lawyers. The act provides that the word "lawyer" shall be construed to include any firm of which such lawyer is a member or associate, and further provides that any judgment or decree entered by any judge of the court of record where the judge thereof bears such relationship shall be a nullity. The act, by its terms, excludes a justice of the peace, probate judge, judge of a court of general sessions, county judge, juvenile judge, or chairman of a county court. By its terms the act provides that, when a judge shall become incompetent by the terms of the act, a special judge shall be selected to try the case in question in accordance with the provision of section 9919 of the Code of Tennessee for the year 1932.

This cause is pending in the chancery court of Washington county at Johnson City, Tenn., and is before this court upon the application by defendant Charles E. Love

and his solicitors, Cox, Taylor & Epps, and W. E. Miller, for a writ of *mandamus* or *certiorari* seeking to set aside and vacate a decree entered by Hon. S. E. Miller, the regularly elected and acting chancellor for said division, by the terms of which decree said chancellor declared his incompetency to hear this cause on the ground that petitioner, W. E. Miller, his son, was an associate, although not a member, of the firm of Cox, Taylor & Epps, solicitors for Charles E. Love, and thereby under the terms and provisions of said chapter 97 of Public Acts of 1937 the regular chancellor was incompetent to hear said cause.

Upon application being duly made, a temporay writ of *mandamus* and writ of *certiorari* were ordered to be issued by this court. The matters involved herein have been ably argued at the bar of this court by solicitors for the petitioners and exhaustive briefs have been filed by *amici curiæ* both in support of the petition and in response thereto, to aid the court in the determination of the validity of said act.

The act in question attempts by its terms to define a specific reason which shall form the basis of the competency or incompetency of a particular judge to hear and determine a particular case.

The Constitution of Tennessee follows the general outline of the Constitution of the United States and of several states of the Union, in separating powers of government into the legislative, executive, and judicial branches.

Article 2, sections 1, 2, of the Constitution, provides as follows:

"Section 1. *Division of powers.*—The powers of the government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.

"Sec. 2. *No person to exercise powers of more than one department.*—No person, or persons, belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

It will therefore be observed that the power of the legislative over the judicial branch of the government must conform to the limitations expressed in the Constitution. It should be noted that the Constitution does not reserve to the Legislature all right to deal with any other branch of the government with certain exceptions, but there is an express prohibition of any branch of the government exercising any power properly belonging to another branch except in the cases expressly directed or permitted by the Constitution itself. *Lawyers' Tax Cases,* 55 Tenn. (8 Heisk.), 565; *The Judges' Cases,* 102 Tenn., 509, 53 S. W., 134, 138.

In *The Judges' Cases, supra,* it was argued that the Legislature has all power not denied by the Constitution of the state nor by the Constitution of the United States, that its power was, with these exceptions, as omnipotent as the power possessed by the Parliament of Great Britain, and that, since the causes of removal were not defined or limited in the Constitution, the Legislature could itself define such causes and remove the judge from office for any reason which it deemed sufficient.

The court, however, rejected this argument upon the principle that it was in conflict with the provisions of the Constitution guaranteeing the independence of the judiciary, and in conflict with the principles instinct in the Constitution that the various departments should be independent of one another. It was held that the

Constitution by implication excluded any power in the Legislature to remove a judge for reasons other than such reasons as may be personal to the judge's conduct of the office. In that case the court said:

"Again, if the power of removal conferred by this section is arbitrary and unlimited a judge might be removed on account of his religion, his politics, his race, or because he had declared unconstitutional a particular enactment of the legislature. Such a construction would be monstrous and wholly abhorrent to fundamental ideas of justice and judicial independence. The design of the framers of the constitution was to create three departments,—executive, legislative, and judicial,—which should be co-ordinate and wholly independent in the exercise of their appropriate functions. 'The legislature, though possessing a larger share of power, no more represents the sovereignty of the people than either of the other departments. It derives its authority from the same high source.' *Bailey* v. *Philadelphia, W. & B. R. Co.*, 4 Har. (Del.) [389], 402 [44 Am. Dec., 593]; *Whittington* v. *Polk,* 1 Har. & J. [(Md.) 236], 244. Said Thomas T. Marshall, viz.: 'We have incorporated certain permanent and eternal principles in written constitutions, and erected an independent judiciary as the depositary and interpreter, the guardian and the priest, of these articles of freedom.' It has been said that, of all the contrivances of human wisdom, this invention of an independent judiciary affords the surest guaranty and the amplest safeguard to personal liberty and the rights of individuals.

"If the legislature has such power as is contended for in the construction of this clause of the constitution, the judiciary would no longer be an independent and co-

ordinate branch of the government, but a mere servile dependency. But it is said, conceding the legislature had no power to remove for the cause assigned, its action is nevertheless final, and not subject to review by the judiciary. If this is so, the distribution of the powers of government, and vesting their exercise in separate departments, would be an idle ceremony. It is very true that no department can control or dictate to another department when acting within its appropriate sphere. *People ex rel. Billings* v. *Bissell* [19 Ill., 229], 68 Am. Dec., 591; *Wright* v. *Wright's Lessee* [2 Md., 429], 56 Am. Dec., 723.''

The next inquiry should therefore consider the cases wherein one branch of the government is *directed or permitted* (italics ours) by the Constitution to exercise any of the powers properly belonging to another department. In the case at bar the question presented is the right of the Legislature to exercise a right of control over the judicial branch of the government. Therefore, we consider the powers which the Constitution directs or permits the Legislature to exercise over the judiciary.

Each of the three Constitutions under which the state has operated has recognized the foregoing principles of division of authority and a restriction of the power of the legislative branch to control or direct the judiciary. The first Constitution of this state, adopted in 1796, vested the judicial power of the state in such superior or inferior courts of law and equity as the Legislature shall from time to time direct and establish. Article 5, section 1, Constitution of 1796.

That Constitution provided for the incompetency of judges as follows:

*"Incompetency of Judges; Special Judges.*—No judge shall sit on the trial of any cause where the parties shall be connected with him by affinity or consanguinity except by consent of parties. In case all the judges of the Superior Court shall be interested in the event of any cause or related to all or either of the parties, the governor of the state shall, in such case, specially commission three men of law knowledge for the determination thereof." Section 8, article 5, Constitution of 1796.

Under the terms of this constitutional limitation a trial judge was incompetent only where the parties were connected with him by affinity or consanguinity. It did not provide for the selection of special judges in any event except the disqualification of all of the judges of the superior court for the reasons stated.

In 1827, while the first Constitution obtained, the Legislature passed an Act (chapter 37) bestowing on the Governor power to commission special judges to hold court where the regular judge was unable to attend on account of sickness. After the passage of this act, the regular judge of Smith county certified to the Governor his inability to hold court on account of sickness, and the Governor thereupon appointed a special judge under the authority and in accordance with the terms of said act. The authority of this special judge was challenged in the case of *Smith* v. *Normant,* 13 Tenn. (5 Yerg.), 271, upon the ground that the act of the Legislature under which the special judge was appointed was unconstitutional. Our court, in an opinion by Chief Justice Catron, held said act to be unconstitutional by application of the following principle:

"Whenever a state constitution prescribes a particular manner in which power shall be executed, it prohibits

every other mode of executing such power. On that particular subject, the authority is exhausted by the constitutional provision, and an attempt to render it nugatory by law, would be an attempt at repeal. The constitution being the paramount law, the act of assembly coming in conflict would be void.''

The court held that, since the Constitution vested the judicial power in judges selected by joint ballot of the two houses of the Legislature, and permitted the judicial power to be exercised by others only in the cases definitely set out in the Constitution, there was no constitutional authority for the act.

The Constitution of 1834 extended the provisions of the Constitution of 1796 and provided as follows with regard to the incompetency of the regular judges and the selection of special judges:

''*Incompetency of judges; special judges.*—No judge of the supreme or inferior courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior court, except by consent of all the parties. In case all or any of the judges of the supreme court shall be thus disqualified from presiding on the trial of any cause or causes, the court, or the judges thereof, shall certify the same to the governor of the State, and he shall forthwith specially commission the requisite number of men of law knowledge for the trial and determination thereof. In case of sickness of any of the judges of the supreme or inferior courts, so that they or any of them are unable to attend, the legislature

shall be authorized to make provision by the general laws that special judges may be appointed to attend said courts." Section 11, article 6, Constitution of 1834.

This Constitution of 1834 provided the following standards to measure the incompetency of judges:

(1) Interest; (2) relationship by affinity or consanguinity to either of the parties; (3) cases in which he may have been of counsel; and (4) cases in which he may have presided in any inferior court.

This Constitution further provides for the appointment of special judges in case of sickness.

However, it will be noted that no provision was made in this Constitution whereby the Legislature could provide for a special judge in the event of incompetency of a regular judge except where the regular judge was unable to attend because of sickness.

The Constitution of 1870 further extends the power of the legislature over the selection of special judges. The grounds for incompetency are identical with the grounds prescribed in the Constitution of 1834 and the complete provision is as follows:

"Sec. 11. *Incompetency of judges; special judges.*— No judge of the Supreme or inferior courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior court, except by consent of all the parties. In case all or any of the judges of the Supreme Court shall thus be disqualified from presiding on the trial of any cause or causes, the court, or the judges thereof, shall certify the same to the Governor of

the State, and he shall forthwith specially commission the requisite number of men, of law knowledge, for the trial and determination thereof. The Legislature may, by general laws, make provision that special judges may be appointed to hold any courts the judge of which shall be unable or fail to attend or sit, or to hear any cause in which the judge may be incompetent.'' Section 11, article 6, Constitution of 1870.

The Legislature is by the terms of the Constitution of 1870 directed or permitted to exercise power over the personnel of the judicial branch of the government to the extent and in the manner prescribed by this constitutional limitation.

The Legislature is also directed or permitted to alter the jurisdiction of circuit, chancery, and other inferior courts (article 6, section 8, Constitution of 1870). By section 1 of article 6 the Legislature is given authority to ordain and establish circuit, chancery, and other inferior courts, including corporation courts, and justice of the peace courts.

A rule of construction of constitutional limitations is stated in Cooley's Constitutional Limitations (8 Ed.), vol. 1, at page 139, as follows:

''Another rule of construction is, that when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases. On this ground it has been held by the Supreme Court of Maryland, that where the constitution defines the qualifications of an officer, it is not in the power of the legislature to change or superadd to them, unless the

power to do so is expressly or by necessary implication conferred by the constitution itself.''

■ It has frequently been stated by this court that it is not the function of the judicial branch of the government to inquire into the wisdom of the action of the legislative body. However, it is equally a cardinal principle of constitutional construction that the judiciary must not amend the Constitution by judicial decision.

■■ We are of the opinion that once the Legislature has established the courts it may alter the jurisdiction thereof under the Constitution and its proper interpretation—see *Jackson* v. *Nimmo,* 71 Tenn. (3 Lea), 597—but the only manner in which it may exercise power over the personnel of the courts by a disqualification of the judges thereof is by a proper interpretation and exercise of the power granted in the constitutional provision, defining the standards for incompetency of judges.

It is argued that there is a difference between constitutional disqualifications and statutory disqualifications. The case of *Tumey* v. *Ohio,* 273 U. S., 510, 47 S. Ct., 437, 71 L. Ed., 749, 50 A. L. R., 1243, is cited in support of this proposition. That case involved a consideration of the violation of the Fourteenth Amendment to the Constitution of the United States consisting of a denial of due process of law to a defendant in a criminal case where the judge convicting said defendant received fees therefrom in the event of conviction. The Supreme Court held that the judge had a direct pecuniary interest in reaching a conclusion against the defendant and therefore the defendant had been denied due process of law. It will be observed that no question of measuring a state statute against a grant of power by the State Constitution was involved.

It is apparent that the only general classifications of incompetency provided in section 11, article 6, of the Constitution of 1870, to which the act in question could be assigned, is that part of said section which reads as follows:

"No judge of the Supreme or inferior courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity."

In a recent case this court held "the interest which disqualifies a judge is a direct pecuniary or property interest, or one which involves some individual right in the subject-matter of the litigation, whereby a liability or pecuniary gain must occur on the event of suit." *Chumbley* v. *Bank & Trust Co.*, 165 Tenn., 655, 57 S. W. (2d), 787, 788.

■ We therefore conclude that the act in question is not a proper exercise by the Legislature of the power granted to make provision for special judges "to hear any cause in which the judge may be incompetent."

■ We adhere to the fundamental principle of democratic constitutional government that, while the judiciary may not properly legislate nor determine the policy of legislation, in like measure the Legislature may not invade the judicial sphere by limitations not directed or permitted by the charter of our liberties, the Constitution itself.

Other questions are raised in the briefs which have been considered by the court, but, since in the view we take of this case the foregoing conclusions will dispose of the entire controversy, we find it unnecessary to consider said additional questions.

It therefore results that this court is of the opinion that chapter 97 of the Public Acts of 1937 is unconstitutional and void and the application of petitioners for a writ of mandamus is hereby granted, vacating and setting aside the order of the trial chancellor declaring himself incompetent and refusing to hear the issues raised in this cause.

The cause is accordingly remanded to the chancery court of Washington county for further proceedings in conformity with this opinion.

Justices CHAMBLISS, McKINNEY, and COOK held themselves disqualified by reason of having sons who were practicing attorneys at the Tennessee bar, and the Governor of the state accordingly appointed JOHN R. AUST, ED T. SEAY, and GEORGE H. ARMISTEAD, JR., as Special Justices.