**STATE of Tennessee, Appellee,**

v.

**William Joseph KELLER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 21, 1991.

Permission to Appeal Denied by Supreme Court June 10, 1991.

William Joseph Keller, pro se.

Charles W. Burson, Atty. Gen., Jerry L. Smith, Deputy Atty. Gen., Nashville, C. Michael Layne, Dist. Atty. Gen., Nelson Forrester, Asst. Dist. Atty. Gen., Manchester, for appellee.

OPINION

SCOTT, Judge.

At a bench trial the appellant was convicted of reckless driving and ordered to pay a fine of $25.00. Much aggrieved by his conviction, he has pursued this pro se appeal, presenting numerous issues which the state in its brief described as "virtually indecipherable." As we understand the brief, the appellant first contends that the Circuit Court of Coffee County lacked jurisdiction to hear and decide the charge against him. He contends that he is a "sovereign individual" and that he is not subject to the jurisdiction of any court except the Tennessee Supreme Court.

■ The Tenth Amendment to the United States Constitution provides as follows:

The powers not delegated to the United States by the Constitution, not prohibited by it to the states, are reserved to the states respectively, or to the people.

In *Claiborne County v. Brooks,* 111 U.S. 400, 4 S.Ct. 489, 494, 28 L.Ed. 470 (1884), the United States Supreme Court stated:

It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess; and the settled decisions of its highest courts on this subject will be regarded as authorative (sic) by the courts of the United States; for it is a question that relates to the internal constitution of the body politic of the state. But as all, or nearly all, the states of the Union are subdivided into political districts similar to those of the country from which our laws and institutions are in great part derived, having the same general purposes and powers of local government and administration, we feel authorized, in the absence of local state statutes or decisions to the contrary, to interpret their general powers in accordance with the analogy furnished by their common prototypes, varied and modified, of course, by the changed conditions and circumstances which arise from our peculiar form of government, our social state, and physical surroundings.

The first Constitution of Tennessee was adopted February 6, 1796 and took effect on June 1, 1796, the date Tennessee was admitted to the Union. The second Constitution was adopted in 1834 and took effect on March 27, 1835 and is generally known as the Constitution of 1834. Our current Constitution of 1870 was adopted February 23, 1870 and became effective May 5, 1870. Compilers Notes to the Preamble and Declaration of Rights of the Constitution of the State of Tennessee.

Article VI, Section 1 of the Tennessee Constitution provides:

The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest

such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established.

In addition to the power to "ordain and establish" courts, the legislature also has the constitutional power to change the jurisdiction of the courts. Article VI, § 8, Tennessee Constitution. *Moore v. Love,* 171 Tenn. 682, 107 S.W.2d 982, 985 (1937). This grant of power to the legislature includes the power to determine how many and what kinds of courts are required for the administration of justice and includes the power to fix the limits of each court's jurisdiction. The power granted to the legislature by Article VI, § 1, includes the power to "create courts of general, special or limited jurisdiction within a particular county or locality." *State ex rel. Ward v. Murrell,* 169 Tenn. 688, 90 S.W.2d 945, 946 (1936), citing numerous cases.

Pursuant to that grant of power, the legislature has expressly conferred "exclusive original jurisdiction of all crimes and misdemeanors, either at common law or by statute" upon the circuit courts, unless otherwise expressly provided by the legislature. T.C.A. § 16–10–102. Like the circuit courts, the jurisdiction of this Court is derived from the grant of power to this Court by the legislature. This Court's jurisdiction extends to the review of, among other things, final judgments of trial courts in criminal cases, both felonies and misdemeanors. T.C.A. § 16–5–108(a)(1).

The appellant was convicted of reckless driving, which is forbidden by T.C.A. § 55–10–205(a).[1] Thus, it is clear that the Circuit Court of Coffee County, assuming the county exists, had jurisdiction to hear and decide the appellant's case and this Court has the jurisdiction to hear this appeal. The contention otherwise is without merit.

■ The appellant also contends that Coffee County does not exist and that the City of Tullahoma does not exist. Thus, the courts of the county and the police officers of the city are powerless to enforce the laws of the State of Tennessee.[2]

Among the counties enumerated as existing within the State of Tennessee is a county known as "Coffee." T.C.A. § 5–1–101. The county was created by the legislature by Chapter 36, Private Acts of 1835–1836. Every county is a public corporation created by and under the control of the legislature of the state and the members of the legislative body of each county assembled are the representatives of the county and authorized to act for it. T.C.A. § 5–1–103. *Maury County v. Lewis County,* 31 Tenn. (1 Swan) 236, 240 (1851). Coffee County exists.

Tullahoma was incorporated by the legislature by Chapter 553 of the Public Acts of 1903. The town of Tullahoma, which according to the Act creating it, is located in the County of "Coffee" was constituted "a body politic and corporate." Section 1, Ch. 553, Public Acts of 1903. Among the powers granted to the mayor and aldermen of the town of Tullahoma is the power "(t)o appoint and regulate the police of the town." Section 10, Ch. 553 of the Public Acts of 1903. The town of Tullahoma also exists.

■ In another issue the appellant contends that he is only bound by the rulings of the Tennessee Supreme Court because of his status as a "sovereign individual." The appellant claims that sovereign individuals, unlike the rest of the mortal citizens of this world, are only bound by the ruling of a constitutional court, and since the Tennessee Supreme Court was the only Court actually created by the Constitution in Arti-

---

1. We note that the appellant was ordered to pay the minimum fine for that offense. T.C.A. § 55–10–205(b) provides that upon the first conviction of reckless driving the penalty was a fine of not less than $25.00 nor more than $500.00, or by a jail sentence of not more than ninety days or by both fine and imprisonment. Effective November 1, 1989, this offense is now a Class B misdemeanor, T.C.A. § 40–35–110, for which the penalty is now a fine of not more

than $500.00 and imprisonment for not more than six months or both. T.C.A. § 40–35–111(e)(2).

2. Although there is no transcript of the evidence, the so-called technical record reveals that the appellant was arrested by a Tullahoma police officer.

cle VI, § 1, that he is not bound by the acts of the inferior courts created by the General Assembly. However, it has been held that while circuit courts are not constitutional courts in the sense that they cannot be abolished by the legislature, they are constitutional courts in the sense that their existence is specifically provided for in the Tennessee Constitution. They are courts "of a high order" which have had jurisdiction of "all criminal offenses" from the time this state was organized. *Thomas v. State*, 109 Tenn. 684, 75 S.W. 1025 (1903).

██ Neither the Constitution nor the legislature has made any jurisdictional distinctions based upon the status of individual citizens. Indeed, to do so would likely be in violation of Section 1 of the Fourteenth Amendment of the United States Constitution, which provides that *"(a)ll persons* born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." (Emphasis added) States are forbidden, among other things, to "deny to any person within its jurisdiction the equal protection of the laws." Thus, whether one is a "sovereign individual" or ordinary citizen, states cannot deny equal protection to either category.

██ In another issue the appellant contends that to stop him and to convict him of reckless driving violated his constitutional right to travel. Although the source of the constitutional right to travel has been the subject of debate, the United States Supreme Court has found that we have such a fundamental right. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969).

Of course, the United States Supreme Court has also recognized that individual rights must be balanced against the needs of the state to regulate conduct in order to protect the health and welfare of all its citizens. The balancing of these interests was expressed on the subject of travel in *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941), as follows:

Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions.

The need for traffic laws is obvious to even the most unlearned in the law. Reckless driving, like other violations of the rules of the road, endangers the lives of those who must travel the roadways of the State. The government of the State has a need, indeed an obligation, to regulate the movement of vehicles and pedestrians on the roadways to insure the safety and welfare of all persons whether citizens or visitors. There is nothing in the record to show that the statute forbidding reckless driving is invalid, that it is discriminatory on its face or that the statute was applied to the appellant in a discriminatory manner. Indeed, the appellant does not deny that he was driving in a reckless manner, but contends that as a "sovereign individual" he could exercise his constitutional right to travel without complying with the state's prohibition against reckless driving. Obviously, this issue has no merit.

██ In another issue the appellant contends that there was a conspiracy between

the trial judge, the District Attorney General and the arresting officer to deny him his constitutional rights, to "close the doors of the courthouse" and to prevent him from receiving justice.[3]

The record contains no proof of the allegations against the court, the prosecutor or the officer. The only "proof" he submits is the fact that he was convicted.[4] Obviously, conviction is a natural result of one's failure to conform his conduct to the requirements of the law. Mere allegations of conspiracy are insufficient for this Court to find that such a criminal enterprise existed. It is the responsibility of the appellant to have prepared a fair, accurate and complete account of what transpired in the trial court with respect to the issues that are the bases of his appeal. Rule 24(b), T.R.A.P. This Court will not set aside a verdict unless the "evidence contained in the record" preponderates against the findings of the trial judge. *State v. Killebrew,* 760 S.W.2d 228, 233 (Tenn.Crim.App.1988). Pro se appellants are required to comply with the relevant statutes, rules and common law just as those who are represented by counsel. *Cole v. State,* 798 S.W.2d 261, 264 (Tenn.Crim.App.1990). Thus, the conspiracy issue was waived for failure to present a record upon which this Court could act.

The appellant's brief contains numerous other complaints which are difficult to decipher. There is no proof in the record to sustain any of these complaints nor citations to legal authorities. Bald assertions unaccompanied by legal argument or citations to authorities are waived. *State v. Galloway,* 696 S.W.2d 364, 369 (Tenn.Crim. App.1985).

Finding no merit to any of the appellant's assertions, the judgment of conviction is affirmed.

JONES and TIPTON, JJ., concur.

---

**3.** We note that in spite of the conspiracy alleged, the appellant waived a jury trial and submitted his case to the trial court at a bench trial.

**4.** His brief is replete with allegations against these officials, but the contents of briefs are not evidence.