IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 7, 2006

## STATE OF TENNESSEE v. CLARICE PERKINS

**Appeal from the Circuit Court for Madison County**
**No. 05-160     Roger Page, Judge**

_____

**No. W2005-01643-CCA-R3-CD  - Filed March 28, 2006**

_____

This is an appeal from the order of the trial court denying the Defendant's motion to withdraw guilty pleas and motion to dismiss all charges. The Defendant, Clarice Perkins, was convicted of two counts of aggravated assault pursuant to entry of guilty pleas. She received an effective eight-year sentence to be served on probation. After sentencing, but before the judgments became final, the Defendant filed pro se motions to withdraw her guilty pleas and to dismiss all charges. After conducting an evidentiary hearing, the trial court denied both motions. On appeal, the Defendant raises two issues: the trial court erred in denying (1) the Defendant's motion to withdraw her guilty pleas, and (2) the Defendant's motion to dismiss all charges. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Clarice Perkins, Pro Se.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jim Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The issues raised in this appeal stem from an October 2004, altercation between the Defendant and two employees of a walk-in medical clinic in Jackson. A Madison County grand jury returned an indictment against the Defendant in February of 2005, charging her with two counts of aggravated assault with a deadly weapon for injuring one person and placing another in fear of bodily

injury.  See Tenn. Code Ann. § 39-13-102.  The Defendant was arraigned and appointed counsel in March of 2005.  Appointed counsel was subsequently allowed to withdraw because the Defendant retained new counsel, ("Trial Counsel").  On June 22, 2005, the day before Defendant was to go to trial, she informed the court she wished to accept a plea agreement, and a guilty plea hearing was conducted.

At the guilty plea hearing, the facts underlying the convictions at issue were described by the prosecutor as follows:

> [T]he State would show upon a trial in regard to Count One that on October the 15th, 2004, in Madison County, Tennessee, the Defendant did intentionally and/or knowingly cause Debra French, the victim, to be in reasonable fear of imminent bodily injury by use of a deadly weapon; to wit: a heavy object.  I think proof would show this turned out to be a heavy tape dispenser.
> In regards to Count Two the State would show that on this date in Madison County, Tennessee, the Defendant did intentionally cause bodily injury to the victim, Bronwyn Henry, now I think Bronwyn Bentley, by use of a deadly weapon; to wit: a heavy object that turned out to be a heavy tape dispenser.[1]

The Defendant testified that these facts, as recounted by the prosecutor, were correct.[2]

The trial court conducted a thorough plea colloquy in which he asked the Defendant, among other inquiries, the following: if at anytime during the plea hearing that you do not understand something, will you speak up; is the information on the plea agreement and trial waiver form correct; and, do you "understand everything on this form?"  To these questions the Defendant answered in the affirmative.  The trial court next explained to the Defendant that she had the right to: a trial; to plead not guilty; to counsel; to confront witnesses; to testify in her defense;  and the right to appeal a conviction if she lost at trial.  Upon explanation of these rights, the following exchange took place:

---

[1]The record reflects that the State amended the indictment at the guilty plea hearing to conform to the evidence, moving the allegation of bodily injury from count one to count two, and the allegation of placing another in fear of injury from count two to count one.

[2]The Defendant later changed her mind concerning the facts, and in an affidavit accompanying her "Motion to Dismiss All Charges," she recounted the confrontation with the two victims quite differently:

> As I preceded [sic] to leave I told them that they were the Rudest people that I have seen.  When I turned to leave the office, the nurse strut [sic] me hard, when I asked her why she hit me she push [sic] me and told me to get out of the office. Scuffle ensued when she pushed me after striking me on my arm and hand.  When the scuffle started the secretary came around and started hitting me from the back and kicking me.  I was trying desperately to get out of the office I was in fear of my life.  They pulled my wig off and continue to pursuit [sic] and fight me as I struggle out of the door.  After I got out of the door and was struggling to get away, one of the women hit me and sprayed me with a fire extinguisher after I got out the door, when we were on the ground outside the door. The woman that was hitting me with the fire extinguisher hit the woman that I was tussling with several times also with the fire extinguisher that she was hitting me with, that is when the woman was injured.  Her friend injured her, not me.

THE COURT: Now, do you understand these rights?

THE DEFENDANT: Yes, sir.

THE COURT: By pleading guilty you're giving up your right to a trial, to an appeal, to a sentencing hearing, as well as all these other rights I've just gone over.

By pleading guilty you're admitting to me that you committed the crime to which you are pleading.

If I accept your plea it will close your case as far as your guilt or innocence is concerned. Also, you will have a conviction on your record for these Class C felonies.

. . . Do you understand all this?

THE DEFENDANT: Yes, sir.

The trial court also asked the Defendant if her pleas were being entered knowingly and voluntarily, to which she replied, "Yeah." When asked if anyone had threatened her or promised her anything to coerce her into pleading guilty, she replied in the negative. The trial court also specifically asked the Defendant if she understood the recommended sentence outlined in the plea agreement, and if pleading guilty and accepting the agreed sentence was "really what you want to do," to which the Defendant replied in the affirmative. Additionally, the Defendant testified that she was satisfied with the representation she received from Trial Counsel. After completing the plea colloquy, the trial court accepted the Defendant's two guilty pleas[3] and entered convictions for two counts of Class C felony aggravated assault. The court sentenced the Defendant to four years for each conviction to be served consecutively for an effective sentence of eight years, to be served on probation.

On June 27, 2005, five days after pleading guilty, the Defendant filed a pro se motion to withdraw her guilty pleas alleging she was "misled" and coerced into accepting a plea agreement she did not understand. A few days later, the Defendant filed a pro se motion to "Dismiss All Charges," alleging there was insufficient evidence to charge her for the crimes for which she was convicted. She stated that the State could better utilize its resources by dropping the case against her and concentrating on "crimes worthy of its time and energy."

In July of 2005, an evidentiary hearing was conducted on the Defendant's two motions, at which the Defendant, proceeding pro se, called one witness. Ms. Gertrude Randolph testified that she sat in on a meeting between the Defendant and Trial Counsel, and that Trial Counsel was "irritable" at this meeting. On cross-examination, Ms. Randolph testified that Trial Counsel was "forceful" in presenting her views, opinions and advice.

---

[3]The record reflects that the Defendant entered a "best interest" plea to count one of the indictment and a standard guilty plea to count two.

The Defendant also testified at the hearing that she did not read the plea agreement and trial waiver form before she signed it; that she did not understand the form; and that the form was never read to her or explained to her. The Defendant further testified that Trial Counsel coerced her into accepting the plea agreement in part by claiming she was not ready to take the case to trial.

On cross-examination, the Defendant admitted that she was informed of all her rights at the guilty plea hearing by the judge. She also said she knew she was to speak up if she did not understand anything, and further admitted that she stated at the hearing that she did understand all of her rights as well as everything contained in the plea agreement and trial waiver form. However, the Defendant maintained that despite what she said at the guilty plea hearing, she actually did not understand. The Defendant also admitted that she told the judge she was entering her guilty pleas knowingly and voluntarily at the plea hearing, but again insisted that she did not really know what she was saying. Additionally, the Defendant admitted that she initially told the trial court that she was satisfied with Trial Counsel's representation. When asked if she was under the influence of drugs or suffering from a mental defect when she entered her pleas, the Defendant replied in the negative but added that she was under significant stress.

Trial Counsel testified that she had twenty-three years of experience as an attorney and had amply prepared for the Defendant's trial. Trial Counsel stated that she thoroughly discussed with the Defendant her options of accepting the plea agreement or going to trial and facing the possibility of jail time, and that the Defendant understood these options. Trial Counsel further stated that the Defendant seemed most concerned with simply avoiding jail time. Trial Counsel described the Defendant's sentence of total probation as "a sweetheart deal," and noted that the Defendant was by all accounts happy with the plea agreement right up to the time she called her probation officer and thought he was "rude" to her. On cross-examination, Trial Counsel stated that she never promised the Defendant that she would be "fully exonerated." Rather, Trial Counsel stated that she informed the Defendant she could get her out of doing jail time, and that is exactly what her plea agreement allowed her to do.

At the conclusion of the evidentiary hearing the trial court found that, with regard to the Defendant's motion to withdraw her guilty pleas, "what we have here is a person who is, number one, trying to abuse the system and, number two, is trying to avoid harsher punishment." The court concluded:

> So based on the totality of the circumstances, I'm going to find, based on what I said to her during the guilty plea proceedings and based on the evidence that we have this morning, that Ms. Perkins did understand that plea and that it was knowingly and voluntarily given. Based on the totality of the circumstances I'm not going to allow a withdrawal.

As to the motion to dismiss, the trial court simply concluded that it "obviously will also be denied."[4] This appeal followed.

## ANALYSIS

The Defendant now claims in her pro se appellate brief that the trial court erred in denying her motion to withdraw guilty pleas and motion to dismiss all charges. To support these claims, the Defendant, in no particular order, makes the following basic arguments: the court "mis-used" [sic] the law to "clear the docket with reckless disregards [sic] for law and the judicial process;" she was "over charged and mis-charged [sic] with aggravated assault; she was "[c]oerced into accepting a plea bargain against her will;" she was "given a harsh sentence;" she had ineffective assistance of counsel; "she is a black female and has been discriminated against;" there is insufficient evidence to convict her of aggravated assault; and the trial court and the District Attorney "have been in collusion in conspiring to treat Defendant pro se grossly unfairly." In our view, the Defendant's arguments do not gain her relief.

### I. Procedural Inadequacies

The State argues in its appellate brief that both of the Defendant's claims on appeal are waived due to the Defendant's failure to cite to any authority to support her arguments and failure to make appropriate citations to the record. We note that our Court requires that appellants, on appeal, present an argument, make appropriate references to the record, and cite relevant legal authority in support of their arguments. See Tenn. Ct. Crim. App. R. 10(b).[5] Additionally, all Tennessee appellate courts require the appellant's brief to contain an argument, citations to authorities, and appropriate references to the record. See Tenn. R. App. P. 27(a)(7).[6] Failure to comply with these basic rules will ordinarily constitute a waiver of the issue. See Tenn. Ct. Crim. App. R. 10(b); State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

In her appellate brief the Defendant fails to cite to any authority in support of her arguments and fails to make "appropriate references to the record."[7] Additionally, the majority of the

---

[4]The trial court issued a formal order denying the two motions on July 19, 2005. The court declared that the motion to withdraw guilty pleas was denied because the Defendant "entered her guilty plea[s] knowingly and voluntarily," and she "failed to show any manifest injustice would result in not allowing the withdrawal of her plea[s]." The trial court denied the motion to dismiss all charges because it "has not grounds to support it."

[5]"Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

[6]"An argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on."

[7]While the Defendant makes a few references to documents in the record on appeal, these references support her argument of actual innocence or insufficient evidence, an argument that is inappropriate for the issues on appeal. As such, we do not consider these cites "appropriate" references to the record.

Defendant's "arguments" are either inappropriate for the issues raised on appeal, such as her multiple challenges to the sufficiency of the evidence, or are merely conclusory statements concerning how she was, in her view, treated unfairly. All of the Defendant's arguments are largely unsupported by the evidence contained in the record on appeal. Under these circumstances we are not obligated to review any of the Defendant's issues as they are presented. See State v. Keller, 813 S.W.2d 146, 150 (Tenn. Crim. App. 1991) ("Bald assertions unaccompanied by legal argument or citations to authorities are waived."). Nonetheless, because an adequate record has been provided for our review, we will overlook these deficiencies and address the merits of the issues raised by the Defendant on appeal.

## II. Motion to Withdraw Guilty Pleas

In her first issue on appeal, the Defendant claims that the trial court erred in denying her motion to withdraw her guilty pleas. To support this claim, the Defendant argues that "[n]o investigation was done by anyone that represented defendant pro se, her public defender tried to make her take a plea bargain, the next attorney that she retained left her in court at a preliminary hearing and did not properly represent her and would not return her phone calls." Also, the Defendant claims she was "[c]oerced into accepting a plea bargain against her will," and that if she had "good counsel, she would not have been indicted." We interpret these allegations to be a claim that she received ineffective assistance of counsel and therefore her guilty pleas were entered unknowingly and involuntarily.

Our supreme court has recently explained the standard for reviewing a trial court's denial of a motion to withdraw a guilty plea as follows:

> A defendant does not have a unilateral right to withdraw a plea. Whether a defendant should be permitted to withdraw a plea is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed. The trial judge "should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial." "[W]hen a constitutional violation is shown, the trial court's discretion is strictly curtailed." The trial court's decision "will not be reversed unless it clearly appears that there was an abuse of discretion." An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion.

State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005) (internal citations omitted).

> The withdrawal of a guilty plea is governed by Tennessee Rule of Criminal Procedure 32(f):
> A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea.

Tenn. R. Crim. P. 32(f). Our high court has noted that "[t]he more demanding standard, 'to correct manifest injustice,' applies to motions [like the Defendant's motion] which are filed after imposition of sentence. This standard is based 'upon practical considerations important to the proper administration of justice.'" Crowe, 168 S.W.3d at 741 (quoting Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963)).

Although "manifest injustice" is not defined in the rules of criminal procedure, courts have identified on a case-by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. See State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Our supreme court has held that withdrawal of a guilty plea to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea. See Crowe, 168 S.W.3d at 742. Additionally, "[w]here there is a denial of due process, there is a manifest injustice as a matter of law." State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991).

However, it is also well-settled law that a defendant's mere change of heart about pleading guilty, or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal. See Crowe, 168 S.W.3d at 743; Henning v. State, 201 S.W.2d 669, 671 (Tenn. 1947); Turner, 919 S.W.2d at 355. Moreover, the defendant bears the burden of establishing that a plea should be withdrawn "to prevent 'manifest injustice.'" Turner, 919 S.W.2d at 355.

In this case, the Defendant argues that her guilty pleas should be withdrawn because they were not knowingly, understandingly or voluntarily entered. We begin our analysis by noting that the determination of whether a plea was entered voluntarily and knowingly is made based on the totality of the circumstances. See Turner, 919 S.W.2d at 353. Upon considering the totality of the circumstances in this case we cannot conclude that the Defendant established that she did not knowingly and voluntarily enter her guilty pleas. The transcript from the guilty plea hearing reflects that the trial court thoroughly and methodically explained the nature of the charges the Defendant faced, all of her rights as an accused, and the consequences of entering a plea of guilty. The court repeatedly asked the Defendant if she understood its instructions, to which she always answered in the affirmative. The court also asked the Defendant if she was "sure" she wanted to go through with the plea agreement, to which she also answered in the affirmative. The Defendant was also expressly asked if she entered her pleas knowingly and voluntarily, to which she answered yes, and was asked if she was being coerced in any manner, to which she answered no. Furthermore, the Defendant also stated that she was satisfied with Trial Counsel's representation.

At the hearing on the motion to withdraw, the Defendant failed to present any evidence that would indicate her pleas were entered unknowingly or involuntarily. To the contrary, the Defendant testified that she was neither under the influence of any narcotics nor suffered from any mental

defects. The Defendant stated only that she was under stress. Additionally, Trial Counsel testified that she thoroughly discussed the Defendant's case with her as well as the "pros and cons" of accepting the plea offer. Under these circumstances, we cannot conclude that the Defendant established that she entered her guilty pleas unknowingly or involuntarily. Accordingly, we conclude that there was no manifest injustice in this case, and therefore the trial court did not err in denying the Defendant's motion to withdraw her guilty pleas. This issue is without merit.

## III. Motion to Dismiss All Charges

In her second issue on appeal, the Defendant asserts that the trial court erred when it denied her motion to dismiss all charges. In the motion to dismiss, the Defendant argued that "she is guilty of nothing and us [sic] completely innocent of all charges." In her appellate brief, the Defendant again argues that there was insufficient evidence to support her convictions. While the Defendant has not provided evidence beyond her own self-serving statements to support this allegation, we conclude that the Defendant has waived all right to claim actual innocence or challenge the sufficiency of the evidence upon which her convictions were based. The law is firmly established that the entry of a knowing and voluntary guilty plea waives any challenge to the sufficiency of the evidence on appeal. See Hobbs v. State 73 S. W. 3d 155, 158-59 (Tenn. Crim. App. 2001) (holding "[a]bsent some proof in the record that [the defendant's] guilty plea was not knowingly and voluntarily entered, the only conclusion that can be reached is that [the defendant] waived any challenge to the sufficiency of the evidence upon entry of the guilty plea.").

In this case, the Defendant's convictions were entered upon her pleas of guilty, in accordance with a negotiated plea agreement. After the judgments of conviction were entered, the Defendant moved to dismiss the charges against her based on her assertion that she was "guilty of nothing." The trial court found the motion to be without merit and denied the motion. We conclude that the trial court did not err.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

-8-