Jack BRACKNER, d/b/a Jack Brackner Company, Plaintiff-Appellee,

v.

District Attorney General Jerry ESTES, Defendant-Appellant,

and

Sheriff Robert Richardson; Police Chief Steve Warren, Niota, Tenn.; Police Chief Sid Mathews, Athens, Tenn.; Police Chief George Jorgenson, Etowah, Tenn.; and Clyde Lewis, Commissioner of Police Services for Etowah, Tennessee, Defendants.

EAST TENNESSEE COIN MACHINES, INC., Plaintiff-Appellee,

v.

District Attorney General Jerry ESTES, Defendant-Appellant,

Sheriff Robert Richardson, Athens, Tenn.; Police Chief Sid Mathews, Athens, Tennessee; Police Chief Steve Warren, Niota, Tennessee; Police Chief George Jorgenson, Etowah, Tenn.; and Clyde Lewis, Commissioner of Police Services for Etowah, Tennessee, Defendants.

A & A AMUSEMENT COMPANY and Taylor, Inc., d/b/a A-1 Amusement Company: A & C Amusement, Inc.: Lawson Music Company, Inc.; and Clyde Swallows, d/b/a Payne Gap Truck Stop Enterprises, Plaintiffs-Appellees,

v.

District Attorney General Jerry ESTES, Defendant-Appellant,

Commissioner Mitchell Lyle; Police Chief Arnold Botts; and Sheriff Robert Lawson, Defendants.

Jack BRACKNER, d/b/a Jack Brackner Company, Plaintiff-Appellee,

v.

District Attorney General Jerry ESTES, Defendant-Appellant,

Sheriff R.H. Johnson; Acting Chief of Police, Madisonville, Morgan Phillips;

Chief of Police, Sweetwater, Kenneth Wilson; and Chief of Police, Vonroe, Thomas Bradford, Defendants.

GAY RECORD AND NOVELTY COMPANY, INC., John Whitley, President, Plaintiff-Appellee,

v.

District Attorney General Jerry ESTES, Defendant-Appellant,

Sheriff R.H. Johnson; Acting Chief of Police, Madisonville, Morgan Phillips, Defendants.

Foster H. LANE, d/b/a Lane Amusement Company, Plaintiff-Appellee,

v.

District Attorney General Jerry ESTES; Defendant-Appellant,

Monroe County Sheriff R.H. Johnson; Acting Chief of Police, Madisonville, Morgan Phillips; and Chief of Police, Tellico Plains, Tenn., Defendants.

Court of Appeals of Tennessee, Eastern Section.

July 12, 1985.

Permission to Appeal Denied by Supreme Court Oct. 7, 1985.

Paul L. Smith, Athens, for appellees Jack Brackner, d/b/a Jack Brackner Co., and Foster H. Lane, d/b/a Lane Amusement Co.

Kendred A. White, Madisonville, for appellee, Gay Record and Novelty Co., Inc.

Roger W. Dickson, Michael S. Pineda, Chattanooga, for appellees, A & A Amusement Co., Taylor, Inc., d/b/a A–1 Amusement Co., A & C Amusement, Inc., Lawson Music Co., Inc., Clyde Swallows, d/b/a Payne Gap Truck Stop Enterprises, and East Tennessee Coin Machines, Inc.

W.J. Michael Cody, Atty. Gen. and Reporter, Kimberly J. Dean, Asst. Atty. Gen., Nashville, for defendant-appellant Jerry N. Estes.

## OPINION

LEWIS, Judge.

This is an appeal by the District Attorney General for the Twenty-Fourth Judicial District of Tennessee from the Trial Court's order of January 14, 1985, "permanently enjoining and restraining" the District Attorney, his agents, servants, and employees "from confiscating any video card games owned by plaintiffs unless there is a probable cause to believe that they are being used for gambling purposes."

The plaintiffs are owners of video card games "available for use by the public" in the Tennessee Counties of Bradley, McMinn, and Monroe.[1] Suits were filed in

---

1. The District Attorney for the Twenty-Fourth Judicial District is a defendant in each of the suits. Certain local officials in the respective counties are defendants in the individual suits, but none of these defendants have appealed.

each of these counties seeking the same relief, *i.e.*, that the defendants be enjoined "from confiscating the plaintiffs' video card games or otherwise interfering with the lawful activities of the plaintiffs."

Since the issues and the relief sought were the same in each case, they were consolidated by consent for hearing.

Appellant presents for our consideration two issues which we necessarily discuss together. They are:

I. Whether the circuit court had jurisdiction to enjoin the confiscation of video card games as gambling devices.

II. Whether the legislature exempted video card games from the definition of gambling device contained in T.C.A. § 39–6–601(4) by enacting T.C.A. § 67–4–504.

In Tennessee the law is clear. A court of equity has no jurisdiction to enjoin pending or threatened prosecution for the violation of criminal laws of this State.

In *Earhart v. Young*, 174 Tenn. 198, 124 S.W.2d 693 (1939), the plaintiff filed his complaint in the Chancery Court for Davidson County and alleged that defendants had seized a pinball machine belonging to him and, also, threatened to arrest him because of his ownership of other pinball machines which he had placed in different establishments in Davidson County and which were being used in those establishments. Plaintiff alleged that the pinball machines were not gambling machines but were for amusement only; and that the defendants knew the pinball machines were "not illegal devices and [did] not violate any of the laws of the State of Tennessee or ordinances of the City of Nashville." Plaintiff sought an injunction enjoining defendants "from in any manner interfering with [plaintiff's] distribution and operation of the pinball machines in question, either directly or indirectly."

The chancellor sustained a demurrer to the complaint and, on appeal, the Supreme Court affirmed, and stated as follows:

In *Kelly & Co. v. Conner*, 122 Tenn. 339, 123 S.W., 622, 627, 25 L.R.A. (N.S.), 201, the court held that the chancery court has no jurisdiction to enjoin pending or threatened prosecutions for the violation of the criminal laws of the State and said: "This proposition, as a rule of general application is unquestionably sound and well established in our jurisprudence." Under section 11276 of the Code, it is made a misdemeanor to keep or exhibit any gaming table or device.

Complainant, in his bill, describes the pinball machines in question and avers that they are not illegal devices. It is upon the theory that the machines are lawful in character that the injunction is sought. In effect, complainant is seeking by his bill a declaration by the court that the machines are not gaming devices. Had the bill been filed under the Declaratory Judgments Law, Code, section 8835 *et seq.*, the court would have been without jurisdiction to enjoin law-enforcing officers from proceeding under a penal statute. *Lindsey v. Drane*, 154 Tenn., 458, 285 S.W., 705; *Erwin Billiard Parlor v. Buckner*, 156 Tenn., 278, 300 S.W. 565.

An exception to the rule that a court of equity has no jurisdiction to restrain a criminal prosecution is that the court will take jurisdiction where property rights are affected. *Frankland Carriage Co. v. City of Jackson*, 160 Tenn., 649, 28 S.W.(2d), 343. But, in order to invoke the aid of equity in such case, the title of the injured party must be clear. This is the rule applicable to injunctive relief as against torts to property. Pomeroy's Eq. Jur., secs. 1347, 1889. And, by analogy, his application to injunctive relief as against the seizure of property by officers acting under a penal statute. If the pinball machines be, in fact, gaming devices complainants could have no standing in court of equity with respect to injunctive relief as against officers seeking their seizure.

*Id.* at 201, 124 S.W.2d at 694.

■ It is plaintiffs' contention that they come within the exception, that is, that

their property rights will be affected by defendants' confiscation of their video card games; and that the court, therefore, has jurisdiction. If the video card games are not gambling devices *per se,* then plaintiffs come within the exception set forth in *Earhart.* However, if they are gambling devices *per se,* then plaintiffs have no property rights to protect. Tenn.Code Ann. § 39–6–602(b) provides that "[n]o property right in any gambling device shall exist or be recognized in any person...."

This Court, in *Clark v. Horner* (Tenn. App. at Jackson, filed August 9, 1984) (permission to appeal denied October 29, 1984), a case involving "video card games," stated in part as follows:

> As to the second issue, the state contends that the trial judge interfered with a criminal proceeding and had no authority to issue the injunction involved herein. We agree with the State, as the courts of this state have long held that the chancery court has no power to enjoin criminal proceedings or prosecution for violation of penal statutes. *See Kirk v. Olgiati,* 203 Tenn. 1, 308 S.W.2d 471 (1957); *Parlor v. Buckner,* 156 Tenn. 278, 300 S.W. 565 (1927). Plaintiff asserts that since he was not charged with a criminal violation, this action by the state does not involve a criminal proceeding. We disagree with plaintiff's assertion. The proceeding for confiscation of illegal property is a criminal proceeding against the illegal property, and, therefore, we hold that the action of the trial court insofar as it seeks to enjoin the confiscation of property under T.C.A. § 39–6–602 is void.

> This court recognizes, however, that plaintiff had a legitimate right to bring a possessory action to determine who should have lawful possession of the machines in question. Therefore, we choose to treat plaintiff's complaint as a complaint for possession of personal property pursuant to T.C.A. § 29–30–101 *et seq.,* and in view of the trial court's stay of enforcement of the so-called "mandatory injunction," the trial court in effect treated the proceeding in the same manner.

As we heretofore noted, the two machines in question were confiscated by the Dyersburg Police Department by virtue of T.C.A. § 39–6–602 on the police department's contention that the two machines are gambling devices. Obviously, under the statute, if the machines are gambling devices they are subject to confiscation as provided in the statute, and the right of possession should remain with the police department. However, on the other hand, if the machines in question are not gambling devices, they should not be subject to confiscation and possession should be returned to the plaintiff. No evidence was presented in the record that the video machines were utilized for gambling. A gambling device subject to confiscation is defined in T.C.A. § 39–6–601 as:

$$* \qquad * \qquad * \qquad * \qquad * \qquad *$$

(4) "Gambling device" means any article, device or mechanism by the operation of in any place in which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance; any article, device or mechanism which, when operated for a consideration does not return the same value or thing of value for the same consideration upon each operation thereof; any device, mechanism, furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and any subassembly or essential part designed or intended for use in connection with any other device, mechanism, furniture, fixture, construction or installation.

This definition shall not include any coin-operated game or device designed and manufactured for bona fide amusement purposes only, which may, by application of skill, entitle the player to replay the game or device at no additional cost if:

(A) The game or device accumulates and reacts to no more than fifteen (15) free replays;

(B) Discharges accumulated free replays only by reactivating the game or device for one (1) additional play for each accumulated free play; and

(C) Makes no permanent record, directly or indirectly, of free replays.

The testimony adduced the following:

Both the machines confiscated possess the capability of accumulating more than 15 free replays. "Payoffs" or "cashouts" of the accumulated free replays were not made by anyone including the plaintiff. The machines simulated the standard five card draw poker game. One could bet from one to eight units on a particular deal and could win from one to fifty units times his bet depending on the hand he received pursuant to the random selector in the machine. Credits for free replays could be accumulated up to 999 units.

The State argued that regardless of whether any proof of payoffs or gambling existed, the machines are gambling devices pursuant to T.C.A. § 39–6–601(4), and therefore, subject to confiscation pursuant to T.C.A. § 39–6–602(a). The State correctly argues that the exception to the definitional section concerning gambling devices does not apply because both the devices accumulated more than 15 replays. The exception only applies when all three subparagraphs (A), (B), and (C), are met.

The broad definition in T.C.A. § 39–6–601(4) includes the machines in question. The machines are mechanisms operated to obtain credits as a result of the operation of the element of chance for consideration. In other words, quarters are placed in this machine by a player to accumulate free replays. Also, for the same consideration the machine does not return the same value. It would be difficult to exclude many of the amusement devices currently popular on the market today under this broad definition. Consequently, even though gambling, according to the ordinary layman definition, did not take place while the player played these machines, these machines are gambling devices pursuant to T.C.A. § 39–6–601 and thus subject to confiscation pursuant to T.C.A. § 39–6–602.

Slip opinion, at 6–8.

■ Plaintiffs stipulate that the machines in this case allow more than fifteen replays, "that these replays have a permanent record, and that they have a 'knockoff button,'" The evidence is clear that the machines in this case permit more than fifteen replays, discharge accumulated free replays on a greater than one for one basis and make a permanent record of free replays. The uncontradicted evidence is that the "video game machines" are gambling devices under § 39–6–601 and subject to confiscation under Tenn.Code Ann. § 39–6–602. They do not come within the exception in Tenn.Code Ann. § 39–6–601(4). They meet none of the criteria in subparagraphs (A), (B), or (C).

Without more, we would necessarily reverse and dismiss under *Clark v. Horner.* However, there is more.

Effective January 1, 1984, Tenn.Code Ann. § 67–4–504 imposed a privilege tax on coin-operated amusement devices. Subsection (a)(1) of § 67–4–504 provides as follows:

(a) As used in this section, unless the context requires otherwise:

(1) "Coin-operated amusement device" or "device" means any coin or token operated game, machine or device which, as a result of depositing a coin, token or other object, automatically or by or through some mechanical or electronic operation involving skill, chance, or a combination thereof, affords music, amusement, or entertainment of some character without vending any merchandise. "Coin-operated amusement device" shall include, but shall not be limited to, the following: coin operated pool tables, juke boxes, video games; which may require the operation of buttons, sticks, knobs or the like, video amusement machines, video card games and video edu-

cational devices. Such "coin-operated amusement device" shall not include any bona fide merchandise vending machines as defined in § 67–4–503, or any device operated for the purpose of unlawful gambling, or a pinball machine as defined in § 39–6–631, or an individually owned amusement device located in a private dwelling and intended for the exclusive private enjoyment of the owner and his guests and not used or operated for gain, profit or other commercial purpose.

Subsection (f) of Tenn.Code Ann. § 67–4–504 provides as follows:

(f) Nothing in this section shall be construed to authorize or permit gambling on any device taxed herein. Notwithstanding the payment of the tax provided for herein, any device used in violation of any provision of part 6 of chapter 6 of title 39 shall be subject to immediate seizure and confiscation in accordance with § 39–6–602.

A privilege tax of $100 per year is levied on each coin-operated amusement device.

Plaintiffs contend that *Clark v. Horner* is not dispositive of the issues in this case since Tenn.Code Ann. § 67–4–504(a) was not considered in arriving at the decision that video card games were gambling devices *per se*. We agree.

The acts giving rise to *Clark* occurred on October 5, 1983, and Tenn.Code Ann. § 67–4–504(a) did not become effective until January 1, 1984, and, so far as we are able to determine, was not considered by the *Clark* Court in arriving at its decision.

It is, therefore, the plaintiffs' argument that the Legislature's enactment of § 67–4–504(a) taxing video card games expressed its intent to treat these machines as non-gambling machines until such time as they were shown to have been used in gambling. It is their insistence that simply because the machine may be used for gambling that it "is not how the machine might be used, but rather how it, in fact, is used."

They argue that the legislative intent to treat video card games as non-gambling

devices is shown by their inclusion in the category of a "coin-operated amusement device" while stating that " 'coin-operated amusement devices' shall not include ... any device operated for the purpose of unlawful gambling." They contend that the Legislature "intended to tax, not outlaw," video card games.

The Trial Court found a conflict between Tenn.Code Ann. § 39–6–601 and Tenn.Code Ann. § 67–4–504(a)(1) and held "that the particular provisions of T.C.A. § 67–4–504 control the general provision of 39–6–601." We agree that where two separate statutory provisions include the same subject matter and one of those provisions is special and the other general, the special prevails because the Legislature is presumed to have intended no conflict between the two. *State v. Nelson*, 577 S.W.2d 465 (Tenn.Crim.App.1978).

Unless it is necessary to avoid a conflict between statutes, we do not reach this rule. "Statutory construction requires statutes to be construed in a manner to avoid conflict...." *Gillis v. Clark Equipment Co.*, 579 S.W.2d 869, 872 (Tenn.App.1978).

The definition of a "gambling device" under Tenn.Code Ann. § 39–6–601 includes plaintiffs' video card games. However, a gambling device does not include "any coin-operated game or device," including video card games which are

designed and manufactured for bona fide amusement purposes, which may, by application of skill, entitle the player to replay the game or device at no additional cost if:

(A) The game or device accumulates and reacts to no more than fifteen (15) free replays;

(B) Discharges accumulated free replays only by reactivating the game or device for one (1) additional play for each accumulated free replay; and

(C) Makes no permanent record, directly or indirectly, of free replays.

Tenn.Code Ann. § 39–6–601(4).

There is no conflict between Tenn.Code Ann. § 39–6–601 and Tenn.Code

Ann. § 67–4–504. Video card games are presumed to be for amusement only if they come within the exception of Tenn.Code Ann. § 39–6–601 and are taxable under Tenn.Code Ann. § 67–4–504. If the video card games do not come within the exception, they are *per se* gambling devices, are not taxable under Tenn.Code Ann. § 67–4–504, and are subject to confiscation under Tenn.Code Ann. § 39–6–602.

The evidence is that the plaintiffs' video card games are gambling devices and that they do not come within the exception. The Trial Court is, therefore, without jurisdiction to enjoin the appellant from the confiscation of the plaintiffs' video card games.

The judgment of the Trial Court is therefore reversed and the cause dismissed with costs assessed against the plaintiffs-appellees.

PARROTT, P.J., and JOE DUNCAN, Special Judge, concur.