**T & W ENTERPRISES, INC.,**
**Plaintiff/Appellee,**

v.

**Joe CASEY, Chief, Metropolitan Police Department, Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

June 18, 1986.

Permission to Appeal Denied by
Supreme Court Sept. 2, 1986.

William L. Parker, Jr., Nashville, for defendant/appellant.

Cecil D. Branstetter, Branch H. Henard, Branstetter, Kilgore, Shranch & Jennings, Nashville, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves the confiscation of fourteen coin-operated video machines that are alleged to be illegal gambling devices. Following the seizure of the machines, their owner obtained an order from the Metropolitan General Sessions Court directing the authorities to return them. The authorities perfected an appeal to the Circuit Court for Davidson County. The trial court, apparently finding that the machines were illegal gambling devices, directed the authorities to return the machines because the owner intended to convert them into legal coin-operated amusement devices.

The authorities have perfected this appeal. We hold that the determination of whether video machines such as the ones involved in this case are illegal gambling devices should be based upon the machines' condition at the time they are seized. Thus, we reverse the judgment of the trial court.

## I.

The Metropolitan Police Department conducted a massive seizure of allegedly illegal gambling devices during October and November, 1984. They seized 157 coin-operated video machines from thirty-nine retail establishments in the Nashville area.[1]

T & W Enterprises, Inc. owned fourteen of the machines seized in this raid. They included six "Pixels" machines, seven "Super Domino" machines, and one "Just for Fun" machine.[2] At the time of their seizure, these machines were located at eleven retail establishments including six convenience markets, three taverns, and two restaurants. T & W Enterprises had purchased the coin-operated amusement device tax stamps required by Tenn.Code Ann. § 67-4-504 for these machines but, like many other owners of similar devices, had not yet "converted" these machines so that they could pass muster under the "per se gambling device" test announced by this Court in *Clark v. Horner,* Dyer Law & Equity No. 29333 (Tenn.App., filed at Jackson Aug. 9, 1984)[3] and *Brackner v. Estes,* 698 S.W.2d 637, 643 (Tenn.App.1985).

The District Attorney General for Davidson County filed a petition in the Criminal Court for Davidson County in accordance with Tenn.Code Ann. §§ 29-3-102 and 39-6-602(a) seeking approval to confiscate and destroy the machines owned by T & W Enterprises as well as the other machines seized in October and November, 1984. Before this could be heard, T & W Enterprises filed fourteen separate warrants to recover personal property in the Metropolitan General Sessions Court seeking the recovery of its machines. The Metropolitan General Sessions Court found in T & W Enterprises' favor, and the Metropolitan Police Department perfected an appeal to the Circuit Court for Davidson County.

The trial court conducted a brief hearing lasting a little more than an hour on February 8, 1985. It became evident that the

---

1. In a separate case, this Court has already had occasion to review the seizure of nineteen video machines seized at the same time the machines in this case were seized. *Turner v. Shriver,* App. No. 85-225-II (Tenn.App., filed at Nashville Jan. 24, 1986) [Available on WESTLAW, TN-CS database].

2. The parties have subsequently agreed that the "Just for Fun" machine seized at Charlies Restaurant was not a gambling device. Thus, the status of this machine is not the subject of this appeal.

3. The Tennessee Supreme Court denied the application for permission to appeal in this case on October 29, 1984.

trial court was primarily interested in determining whether any of the fourteen machines had been converted to legal coin-operated amusement devices. When counsel informed the trial court that the machines had not been converted, the court noted:

Well, if they do it would make a big difference to me, because I have got to be consistent in my ruling. And I have already ruled in other cases that the ones that had been converted to comply as best they could with those instructions set out in the west Tennessee case. I held that they were not gambling devices per se.

Following this comment, counsel pointed out to the court that the affidavit of the owner of T & W Enterprises stated that

those machines which had not been converted to comply with recent rulings of the appellate courts; kits had been ordered and were in the process of converting those to so comply.

One of the police officers involved in the seizure of the machines stated categorically that none of the fourteen machines involved in this case had been "converted."

Apparently relying upon proof in another unrelated case, the trial court stated:

But the ones that are picked up here—I have learned, you see, that when all this all broke, and they learned about getting converters from out in California, that everybody ordered them, you know, to get their machines—so they could get them to comply with what they thought the law to be.

The trial court added later:

[I]f they were in the process of trying to get the parts here, but everybody ordered them at one time, and they couldn't fill all the orders. And I can understand that.

Thus, the trial court ruled:

It's the principle of the converter, though, that I have made my ruling on in other cases, and I'm certainly going to be consistent. And I think from testimony I have here today, and all, that I think the owner of these machines should have them returned to him immediately.

And if these converters, when that's tested by law, if that doesn't correct it and comply with the law, then you can go out and confiscate them again. But right now I'm of the opinion that if they make the effort or are in the process of making the effort to convert these machines, that they ought to have them back.

## II.

It is apparent that the basis for the trial court's decision was its ruling that a gambling device could not be confiscated if its owner was in the process of converting it into a legal coin-operated amusement device. This rationale flies in the face of the "per se gambling device" rule of this Court. Judge Lewis, has succinctly stated:

Video card games are presumed to be for amusement only if they come within the exception of Tenn.Code Ann. § 39-6-601 and are taxable under Tenn.Code Ann. § 67-4-504. If the video card games do not come within the exception, they are *per se* gambling devices, are not taxable under Tenn.Code Ann. § 67-4-504, and are subject to confiscation under Tenn. Code Ann. § 39-6-602. *Brackner v. Estes,* 698 S.W.2d 637, 643 (Tenn.App. 1985).

Thus, in a case arising from the same seizure of machines involved in this case, this Court rejected the trial court's rationale that illegal gambling machines were not contraband if the owner intended to "convert" them into legal machines and held:

No authority is cited for any power or discretion of any court to overlook the illegal character of contraband upon the promise of the owner of the contraband to convert it into legal property. If this were the law, confiscation statutes would be virtually meaningless upon a plea of good intentions for the future use of the contraband. *Turner v. Shriver,* App. No. 85–225–II, slip op. at 5 (Tenn.App., filed at Nashville Jan. 24, 1986)

Therefore, we hold that the legality of a coin-operated video device rests not upon

the intention of its owner but rather upon its condition and method of operation at the time it is seized. If it is a gambling device per se, it is subject to seizure. It is also subject to seizure even if it is not a per se gambling device if it is being used to gamble. *West Knoxville American Legion Post 223 v. Jenkins,* 637 S.W.2d 899, 902 (Tenn.Crim.App.1982).

## III.

T & W Enterprises asserts that its machines should not be found to be illegal gambling devices because they were not actually being used for gambling purposes at the time they were seized. Relying upon *Harris v. State,* 207 Tenn. 538, 341 S.W.2d 576 (1960) and the 1983 enactment of Tenn.Code Ann. § 67–4–504 that imposed a tax upon the privilege of operating coin-operated amusement devices, it contends that the General Assembly intended to legalize these machines unless they were actually being used for gambling thus taking them beyond the "per se" definition of a gambling device found at Tenn.Code Ann. § 39–6–601(4). We do not agree. Tenn. Code Ann. §§ 67–4–504 and 39–6–601(4) are not in conflict. *Brackner v. Estes,* 698 S.W.2d 637, 642–43 (Tenn.App.1985). In light of Tenn.Code Ann. § 67–4–504(f), it appears that in enacting the tax on coin-operated amusement devices, the General Assembly intended to make clear that purchasing a tax stamp and affixing it to a

device capable of being used for gambling would not render an illegal device legal.

Without much dispute, the evidence in this record preponderates in favor of finding that the thirteen "Pixels" and "Super Domino" video machines do not fit the "coin-operated game" exception in Tenn. Code Ann. § 39–6–601(4). Sergeant Grady Toler testified that these machines accumulated and reacted to more than fifteen free replays, that they discharged the accumulated free replays more than one at a time, and that they made a permanent record of the free replays.[4] Having failed to comply with the requirements of the exception in Tenn.Code Ann. § 39–6–601(4), these video machines, by the nature of their operation, are gambling devices per se and thus are subject to confiscation and forfeiture pursuant to Tenn.Code Ann. § 39–6–602.

The judgment of the trial court is vacated and reversed. The case is remanded with directions that T & W Enterprises' action be dismissed. The costs of this appeal are taxed against T & W Enterprises, and its surety, for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

---

**4.** Sergeant Toler testified that rather than testing each machine, with the agreement of counsel for T & W Enterprises, he tested one representative sample of each type of machine in counsel's presence. The parties agreed that the results of these tests would be equally applicable to all machines of a similar type.