# IN THE COURT OF APPEALS OF TENNESSEE,
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **TENNESSEE DOWNS, INC.**, in its corporate capacity and on behalf of its employees, JOHN DOES and JANE DOES, | ) ) ) ) | On appeal from the Shelby County Chancery Court, Part 2 |
| Plaintiffs/Appellees, | ) ) | Case No. 98-0675 |
| v. | ) ) | C.A. No. 02A01-9812-CH-00379 |
| **WILLIAM L. GIBBONS**, in his official capacity as District Attorney General for the State of Tennessee, 30th Judicial District, | ) ) ) ) ) ) | |
| Defendant/Appellant. | ) | |

**FILED**

**July 30, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

On Appeal from the Chancery Court for Shelby County, Tennessee
**Honorable Chancellor Floyd Peete, Jr.**

**Scott K. Haynes**, Nashville, Tennessee
**Henry Walker**, Nashville, Tennessee
**Luther Wright, Jr.**, Nashville, Tennessee
**Handel R. Durham, Jr.**, Memphis, Tennessee
Attorneys for Plaintiffs/Appellees.

**Paul G. Summers**, Attorney General & Reporter
**Michael E. Moore**, Solicitor General
**Gina J. Barnham**, Deputy Attorney General
**Janet M. Kleinfelter**, Senior Counsel
Attorneys for Defendant/Appellant.

OPINION FILED:

**REVERSED AND DISMISSED
INJUNCTION DISSOLVED**

**TATUM, S.J.**

**HIGHERS, J.:** (Concurs)
**FARMER, J.:** (Concurs)

**O P I N I O N**

This case presents an appeal as of right of William L. Gibbons, District Attorney General, for the State of Tennessee, 30th Judicial District, from a decision by the Chancery Court of Shelby County, Part II. Plaintiff, Tennessee Downs, Inc., who proposed to conduct pari-mutuel wagering on horse racing in Memphis, Tennessee, sought a declaration from the Chancery Court under 42 U.S.C. § 1983 that such activity was legal and not prohibited under Tennessee's anti-gambling statutes, and, therefore, it had a lawful right to engage in such activity. The Plaintiff also sought a permanent injunction enjoining General Gibbons from prosecuting, or threatening to prosecute, Plaintiff under Tennessee's anti-gambling statutes.

In his answer, General Gibbons denied that the Chancery Court had jurisdiction. He further asserted that Plaintiff had failed to state a claim upon which relief could be granted and that the activities that Plaintiff proposed to engage in are illegal under Tennessee law. General Gibbons resisted the motion for an injunction on various grounds.

General Gibbons filed his own affidavit in which he testified that he would prosecute Plaintiff and its employees for violating Tennessee's anti-gambling statutes if they attempted to conduct pari-mutuel wagering on horse racing without a valid license. Plaintiff informed the court that it was only seeking injunctive relief pursuant to its claim under 42 U.S.C. § 1983 and that its declaratory judgment action and any action for damages were not before the court.

After the hearing, the Chancellor issued a memorandum opinion in which it found that it had subject matter jurisdiction solely by virtue of the language of 42 U.S.C. § 1983. The Chancellor further found that "a property right that has been bestowed on the Plaintiffs by the passing of the Racing Control Act, which did vest in Tennessee residents the right to engage in the pursuit of this particular business and profession under certain circumstances," such circumstances being the possession of a license. However, because

2

the Tennessee Racing Commission was no longer in existence, the chancery court found that the need for a license was suspended and, therefore, could "not be enforced by the Attorney General or any other agency."

The chancery court also found that the Plaintiff had a liberty interest in the "right to engage in whatever legal business one elects to pursue without arbitrary governmental interference" and that "the threatened prosecution of Plaintiff's [sic] by the Attorney General appears to this Court to be an unlawful and arbitrary governmental interference." Accordingly, the chancery court enjoined General Gibbons "from depriving Plaintiffs of their liberty and property rights without due process."

The facts in this case are not in dispute. Plaintiff, Tennessee Downs, Inc., is a Tennessee corporation that proposes to engage in the operation of pari-mutuel betting facilities and horse racing tracks in Tennessee. Defendant, William L. Gibbons, is the duly elected District Attorney General for the State of Tennessee, 30th Judicial District.

By Chapter 311, § 1, Public Acts of 1987, (codified at Tenn. Code Ann. §§ 4-36-101, *et seq.*) Tennessee legislature passed the "Racing Control Act of 1987," which created the Tennessee State Racing Commission and vested the Commission "with plenary power to control and regulate racing in Tennessee, with full recognition of the statement that racing is a privilege and is not a right." This Act went into effect on May 7, 1987, for the purposes of appointing the membership of the Commission, authorizing the promulgation of rules by the Commission, and authorizing the referenda established by the Act. The Commission promulgated Race Meeting License rules and regulations under the Act.

On October 8, 1987, the City of Memphis conducted a referendum pursuant to Tenn. Code Ann. § 4-36-401, in which over 60% of the voters approved of conducting horse racing with pari-mutuel wagering within the city.

In 1993, the legislature amended the Tennessee Governmental Entity Review Law

3

to add the Commission as one of the governmental entities scheduled to terminate on June 30, 1997. Pursuant to that law, the legislative evaluation committee reviewed the continued existence of the Commission in June of 1996 and recommended that the Commission be continued until June 30, 2000; however, legislation to continue the Commission failed to pass out of the Senate Government Operations Committee and was never acted upon by the legislature. Other attempts were made to extend the termination date of the Commission, but all failed to pass in the Senate. Accordingly, at the end of the one-year wind up period, the Commission was terminated and ceased all activities on June 30, 1998. See Tenn. Code Ann. §§ 4-3L-101, *et seq.;* 4-29-112; Acts of 1993, ch. 391, § 2.

On April 3, 1998, the Commission awarded a race meeting license to Plaintiff for a term that "begins on April 3, 1998, and expires at midnight December 31, 2000, or upon the Tennessee State Racing Commission going out of existence, whichever occurs first." With the termination of the Commission on June 30, 1998, Plaintiff's race meeting license also terminated.

Under the chancellor's ruling, the Plaintiff and all other persons may engage in the business of pari-mutuel wagering on horse racing, without regulation, in Memphis and throughout the State. The Act provides that only one license shall be issued in each Grand Division, but the chancellor held that a license is not necessary, since the issuing authority is no longer in existence; hence, any number of persons may lawfully engage in this business in all three grand divisions.

We address the first issue which raises the threshold question as to whether the chancery court of Shelby County had jurisdiction to declare Plaintiff's proposed conduct legal, and to enjoin a threatened criminal prosecution. As previously stated, the chancellor found that he had jurisdiction on the sole ground that it was granted to the chancery court of Shelby County pursuant to the enactment of 42 U.S.C. § 1983. That federal statute provides:

4

Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

In his decree, the Chancellor stated:

Section 1983 clearly by its language gives this Court, a court of equity, jurisdiction to adjudicate this action as construed by the Plaintiff. By bringing the action under Section 1983, the Plaintiffs have successfully bypassed the Defendants [sic] jurisdictional argument. Congress clearly intended for Courts such as this to have jurisdiction over such actions as the one brought by this Plaintiff.

By the enactment of § 1983, Congress did not intend nor attempt to tamper with or alter jurisdiction of state courts, and it is our opinion that federalism would have prevented it from doing so. Article 3 of the United States Constitution authorizes Congress to establish and define the jurisdiction of federal courts; but nowhere in the United States Constitution is the power granted to Congress to establish or define jurisdiction of state courts. This power was retained by the states. The fundamental principle of "federalism" is succinctly stated by Mr. Justice Black, speaking for the United States Supreme Court in Afroyim v. Rusk, 387 U.S. 253, 87 S. Ct. 1660, 18 L. Ed. 2d 757 (1967):

Our Constitution governs us and we must never forget that our Constitution limits the [United States] Government to those powers specifically granted or those that are necessary and proper to carry out the specifically granted ones.

The United States Supreme Court, dealing with questions of equitable jurisdiction of federal Courts, has recognized that 42 U.S.C. § 1983 did not attempt to bestow equity jurisdiction even in federal courts, when equity jurisdiction did not previously exist. It was so held in Giles v. Harris, 189 U.S. 475, 23 S. Ct. 639, 47 L. Ed. 909, 912 (1903). Giles v. Harris was followed with approval by the U.S. Supreme Court in Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S. Ct. 598, 607-08, 42 L. Ed. 2d 561 (1976) when the Court stated:

5

"Section 1983 by its terms confers authority to grant equitable relief as well as damages, but its words "allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is proper proceeding."

In arguing this jurisdictional question, the Plaintiffs have cited Babbitt v. United Farm Workers National Union, 442 U.S. 286, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979), and Steffel v. Thompson, 415 U.S. 452, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974). These cases, like Giles and Rizzo, deal only with jurisdiction of federal courts and have no bearing on the question of jurisdiction of Tennessee equity courts. There are no cases holding that Congress has power to fix jurisdiction of state courts; and, as stated, there is no language in § 1983 indicating an attempt to do so.

For the foregoing reasons, we hold that 42 U.S.C. § 1983 did not bestow jurisdiction in Tennessee courts of equity to enjoin threatened criminal proceedings and that the jurisdiction of chancery courts in this regard remains as fixed by existing state law. It is a well-established rule of equity jurisprudence that courts of equity have no jurisdiction to enjoin the enforcement of state criminal laws. In accordance with this rule, the Tennessee Supreme Court has consistently held that the chancery courts of this state have no jurisdiction, inherent or statutory, to enjoin threatened criminal prosecutions, particularly as the defense of such prosecution provides an adequate remedy. This proposition is discussed at length in Kelly v. Conner, 122 Tenn. 339, 391, 396-97, 123 S.W. 622, 635, 636-37 (1909) wherein the court stated:

Courts of equity are not constituted to deal with crime and criminal proceedings. If the law be held valid, they cannot punish the complainant for the offenses committed, or compensate those injured by his wrongful action while the hands of the officers of the law are stayed by injunction. The exercise of the jurisdiction contended for would greatly confuse and embarrass the enforcement of the police power, and, upon sound principles of public policy, it ought not to be favored.

* * *

We are further of the opinion that courts of equity have no jurisdiction to enjoin threatened criminal proceedings under a statute enacted by a State in the exercise of the police power in relation to which the legislature has complete jurisdiction, although it be charged that the statute is invalid and that a multiplicity of actions thereunder will injure and destroy civil

and property rights of the complainants, and that the damages resulting will be irreparable, when the complainants' defense thereto, in a court having jurisdiction of the offense, is adequate and unembarrassed; and we hold that the chancery courts of Tennessee, neither under their inherent nor statutory jurisdiction, have any such power or jurisdiction, whatever may be the exceptions to the general rule in the courts of equity of other jurisdictions.

* * *

The rule which prevents a court of chancery from interfering with the administration of the criminal laws of this State is a wise one, founded upon sound principles of public policy, and, if we had the power to do so, we fear that changing it would result in much confusion and embarrassment in preserving peace and order, and enforcing the police power of the State generally, which would outweigh the good that would follow an immediate decision of this case upon the merits. The injury to the general public, which would ultimately result from the exercise of this jurisdiction, would be greater than that to individuals when left to their remedies in courts of law.

The rule has been recognized and followed as late as 1996, when the Court of Appeals held in State v. First Trust Money Services, Inc., 931 S.W.2d 226, 229 (Tenn. Ct. App. 1996), without discussion, that a counterclaim brought pursuant to 42 U.S.C. § 1983 did not bestow jurisdiction on courts of equity in this state to enjoin enforcement of state criminal laws. See also Spoone v. Mayor & Aldermen of Morristown, 185 Tenn. 454, 206 S.W.2d 422 (1947); Windrow v. Stephens, 20 Tenn. App. 647, 103 S.W.2d 584, 586 (1937); Brackner v. Estes, 698 S.W.2d 637, 639 (Tenn. Ct. App. 1985).

The Plaintiffs point out that Tennessee courts have, in some instances, recognized the jurisdiction of the chancery courts to issue injunctions "where property rights are affected," citing Brackner v. Estes, 698 S.W.2d 637 (Tenn. Ct. App. 1985), and Earhart v. Young, 174 Tenn. 198, 124 S.W.2d 693 (Tenn. 1939). In the Brackner case, the Court of Appeals recognized that the so called "property rights exception" is that a "Plaintiff had a legitimate right to bring a possessory action to determine who should have lawful possession" of tangible property. In the case before us, possession of property is not involved.

Article VI, Section 8 of the Tennessee Constitution provides "the jurisdiction of the

7

circuit, chancery and other inferior courts, shall be as now established by law, until changed by the legislature." Pursuant to this constitutional provision, the Tennessee General Assembly has vested exclusive and original jurisdiction of all criminal matters in the circuit and criminal courts of this state. Tenn. Code Ann. §§ 16-10-102; 40-1-107 to 108. Only the General Assembly of Tennessee can increase or diminish the jurisdictions of the circuit, chancery and other inferior courts of this state. Moore v. Love, 171 Tenn. 682, 107 S.W.2d 982, 984 (1937).

A district attorney general is answerable to no superior and has virtually unbridled discretion in determining to prosecute and for what offense. No court may interfere with the discretion of a district attorney general to prosecute, and, in the formulation of this decision, he or she is answerable to no one. See Dearborne v. State, 575 S.W.2d 259, 262 (Tenn. 1978). The general assembly cannot enact laws which impede the inherent discretion and responsibility of the office of district attorney general without violating Article VI, Section 5, of the Tennessee Constitution. State v. Superior Oil, Inc., 875 S.W.2d 658, 66 (Tenn. 1994), quoting State v. Taylor, 693 S.W.2d 757, 760 (Tenn. Crim. App. 1983).

It results that the first issue is sustained. This issue being dispositive of the case, the other issues are pretermitted. The judgment of the trial court is reversed, the case is dismissed, and the injunction is dissolved. The Plaintiffs will pay the costs.

--------------------------------------------------------
F. LLOYD TATUM, SENIOR JUDGE

CONCUR:

------------------------------------------------------------------
ALAN E. HIGHERS, JUDGE

------------------------------------------------------------------
DAVID R. FARMER, JUDGE

8