IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2014 Session

**VINCENT SIMS v. WAYNE CARPENTER, ET AL.**

**Appeal from the Chancery Court for Davidson County**
**No. 131445IV     Russell T. Perkins, Judge**

_____

**No. M2014-00687-COA-R3-CV – Filed August 4, 2016**
_____

Capital defendant brought a declaratory judgment action seeking to enjoin his execution, asserting that he meets the statutory criteria of being intellectually disabled and, therefore, is ineligible to be sentenced to death. Defendants, the warden of the institution where he is incarcerated and the Tennessee Attorney General, moved to dismiss the complaint on the grounds that the trial court lacked subject matter jurisdiction, that the suit was barred by the doctrine of sovereign immunity, and that the suit failed to state a claim for relief. The trial court granted the motion and dismissed the case. Finding no error, we affirm the holding of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Daniel E. Kirsch, Nashville, Tennessee, for the appellant, Vincent Sims.

Herbert H. Slatery, II, Attorney General and Reporter; Scott C. Sutherland and Nicholas W. Spangler, Assistant Attorneys General, for the appellees, Wayne Carpenter, et al.

**OPINION**

I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 1998, Vincent Sims was convicted of first degree murder and sentenced to death in Shelby County Criminal Court. On April 17, 2001, the Tennessee Supreme Court

affirmed the conviction and sentence on direct appeal. Numerous post-conviction and *error coram nobis* proceedings have been denied. [1]

On October 11, 2013, Mr. Sims filed a declaratory judgment action in the Davidson County Chancery Court naming Wayne Carpenter, Warden of Riverbend Maximum Security Institution, and Robert E. Cooper, Jr., then the Tennessee Attorney General ("Defendants"), in their official capacities, as defendants. [2] Mr. Sims sought a declaration that he was ineligible for the death penalty because he met the intellectual disability criteria at Tenn. Code Ann. § 39-13-203(a), and that his execution would violate the State and Federal Constitutions. The Complaint also sought to enjoin Mr. Sims' execution. [3]

Defendants moved to dismiss Mr. Sims' complaint for lack of subject matter jurisdiction, asserting that the criminal court had exclusive jurisdiction over the matter, and

---

[1] *See State v. Sims*, 45 S.W.3d 1 (Tenn. 2001); *Sims v. State*, No. W2008-02823-CCA-R3-PD, 2011 WL 334285 (Tenn. Crim. App. Jan. 28, 2011), *perm. app. denied* (Tenn. August 31, 2011); *Sims v. State*, W2013-02594-CCA-R28-PD (Tenn. Crim. App. Feb. 5, 2014), *perm. app. denied* (Tenn. May 28, 2014); *Sims v. State*, 2014-00166-CCA-R3-PD (Tenn. Crim. App. Dec. 23, 2014), *perm. app. denied* (Tenn. May 18, 2015); *Sims v. State*, W2015-01713-CCA-R28-PD (Tenn. Crim. App. Jan 28, 2016), *perm. app. denied* (Tenn. May 6, 2016).

[2] During the pendency of this case, a new Attorney General took office, Herbert Slatery III. "[W]hen a state official sued in his official capacity dies or leaves office during the pendency of the action, 'the officer's successor is automatically substituted as a party.'" *Hamilton v. Cook*, No. 02A01-9712-CV-00324, 1998 WL 704528, at *9 (Tenn. Ct. App. Oct. 12, 1998) (citing Tenn. R. Civ. P. 25.04(1)).

[3] In 1990, the Tennessee General Assembly passed Tenn. Code Ann. § 39-13-203, which prohibited the execution of a defendant convicted of first degree murder who had an intellectual disability at the time of committing the offense from being executed. Subsection (a) of the statute defines intellectual disability as follows:

> (1) Significantly subaverage general intellectual functioning as evidenced by a functional intelligence quotient (I.Q.) of seventy (70) or below;
>
> (2) Deficits in adaptive behavior; and
>
> (3) The intellectual disability must have been manifested during the developmental period, or by eighteen (18) years of age.

In 2001, the Tennessee Supreme Court determined that the federal and state constitutions prohibit the execution of persons who are intellectually disabled. *See Van Tran v. State*, 66 S.W.3d 790, 812 (Tenn. 2001). Shortly thereafter, the United States Supreme Court declared that the federal constitution prohibited the execution of the intellectually disabled. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002).

on the basis of sovereign immunity pursuant to Tenn. Civ. P. 12.02(1). On December 13, Mr. Sims filed a response to the motion to dismiss as well as an amended complaint in which Mr. Sims purported to sue the Defendants in both their official and individual capacities.

Counts 1 through 3 of the amended complaint arise from the Declaratory Judgment Act at Tennessee Code Annotated §§ 29-14-101 to 113, and sought the following declarations:

(1)     Vincent Sims meets the criteria for intellectual disability as that term is defined by Tenn. Code Ann. § 39-13-203(a), and he did so on April 5, 1996;

(2)     Any application of Tenn. Code Ann. § 40-23-116 to Vincent Sims would violate Article I, §§ 8 and 16, of the Tennessee Constitution and the Eighth and Fourteenth Amendments to the United States Constitution; and

(3)     Any execution of Vincent Sims would violate Article I, §§ 8 and 16, of the Tennessee Constitution and the Eighth and Fourteenth Amendments to the United States Constitution.

Count IV of the amended complaint, based on Article I, §§ 8 and 16 of the Tennessee Constitution, and Count V, based on the Eighth and Fourteenth Amendments to the United States Constitution, sought to have the court determine that he met the criteria for intellectual disability at Tenn. Code Ann. § 39-13-203 on April 5, 1996, and to permanently enjoin his execution. Defendants moved to dismiss the amended complaint, on the basis of Tenn. R. Civ. P. 12.01(1), (6).

The court heard the motion to dismiss the amended complaint on March 14, 2014, and on March 21 entered an order granting the motion to dismiss the case. Mr. Sims appeals, contending that the chancery court had subject matter jurisdiction to consider whether Mr. Sims meets the Tenn. Code Ann. § 39-13-203(a) intellectual disability criteria and that the sovereign immunity doctrine does not shield defendants from Mr. Sims' suit.

## II.     DISCUSSION

In a related case, *Pervis Tyrone Payne v. Wayne Carpenter, et. al*, M2014-00688-COA-R3-CV, this court discussed whether the chancery court had subject matter jurisdiction to make the determination whether Mr. Payne was intellectually disabled. We held in that

3

case that it did not.  The issues raised by Mr. Sims are the same as those resolved in *Payne*, and we therefore adopt the rationale and the holding in *Payne*, which we set forth below:

### A.    Sovereign Immunity

The doctrine of sovereign immunity, derived from Article I, Section 17 of the Tennessee Constitution[4] and codified at Tenn. Code Ann. § 20-13-102(a),[5] prohibits suits against the state, including state officers acting in their official capacities, unless specifically authorized by statute.  *See Colonial Pipeline Company v. Morgan*, 263 S.W.3d 827, 848-49 (Tenn. 2008).  Sovereign immunity, however, does not bar suits to prevent state officers from enforcing a statute which is alleged to be unconstitutional; in those incidences the officials do not act under the authority of the state, i.e., their actions are *ultra vires*. *Id. at* 849-52 (citing *Stockton v. Morris & Pierce*, 110 S.W.2d 480 (Tenn. 1937)).

Mr. [Sims] does not allege that Tenn. Code Ann. § 39-13-203 is unconstitutional; he contends that *Colonial Pipeline* does not limit the *ultra vires* exception to sovereign immunity to cases which allege that a statute is unconstitutional, but that the exception "applies any time a lawsuit asserts that a State official acted or threatened to act outside the scope of his authority." Mr. [Sims] alleges that he is mentally disabled as defined in the statute and, as a consequence, the Defendants will act outside the scope of their authority if they execute him.

---

[4]  [Footnote 6 in original] Article I, Section 17 of the Tennessee Constitution states:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.  Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

[5]  [Footnote 7 in original] Tenn. Code Ann. § 20-13-102(a) provides:

> No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea or demurrer of the law officer of the state, or counsel employed for the state.

We find nothing in *Colonial Pipeline* to support this proposition; to the contrary, *Colonial Pipeline* clearly and unambiguously held that the *ultra vires* exception articulated in *Stockton* "pertains only to suits preventing the enforcement of an unconstitutional statute." *Id.*, 263 S.W.3d at 850. *Colonial Pipeline* held that the Declaratory Judgment Act grants a court subject matter jurisdiction to address constitutional issues and, as necessary, "issue declaratory or injunctive relief against the Defendants in their individual capacity, *so long as the court's judgment is tailored to prevent the implementation of unconstitutional legislation* and does not 'reach the state, its treasury, funds, or property,'" and sovereign immunity is not waived in a declaratory judgment action. 263 S.W.3d at 853 (internal citation omitted; emphasis added). The allegation that the official is enforcing an unconstitutional statute is a threshold requirement to remove the immunity; that threshold is not met here.

The Defendants in this case were sued in their official and individual capacities. The only factual allegation relative to Defendant Carpenter is that he is the warden of Riverbend Maximum Security Institution and, since prisoners are executed at Riverbend, Tenn. Code Ann. § 40-23-116 "requires Warden Carpenter to cause Mr. [Sims]'s death."[6] The only allegation relative to Defendant Cooper is that he held the position of the Attorney General and Reporter for the State of Tennessee. These allegations, in the absence of a claim that the statute being enforced is unconstitutional, are not sufficient to state a claim against the defendants in their individual capacity for the purposes of granting relief to Mr. [Sims]. Accordingly, we affirm the trial court's holding that the claims were barred by sovereign immunity.

---

[6] [Footnote 8 in original] Tenn. Code Ann. § 40-23-116(a)(2012) states:

> In all cases in which the sentence of death has been passed upon any person by the courts of this state, it is the duty of the sheriff of the county in which the sentence of death has been passed to remove the person so sentenced to death from that county to the state penitentiary in which the death chamber is located, within a reasonable time before the date fixed for the execution of the death sentence in the judgment and mandate of the court pronouncing the death sentence. On the date fixed for the execution in the judgment and mandate of the court, the warden of the state penitentiary in which the death chamber is located shall cause the death sentence to be carried out within an enclosure to be prepared for that purpose in strict seclusion and privacy. . . .

5

Even though we have determined that sovereign immunity bars this suit, we will address whether the Davidson County Chancery Court had subject matter jurisdiction to consider whether Mr. [Sims] meets the intellectual disability criteria found in Tenn. Code Ann. § 39-13-203(a).

## B. Subject Matter Jurisdiction to Determine Intellectual Disability

"Whether a particular court can decide certain matters is a question of subject matter jurisdiction." *P.E.K. v. J.M.*, 52 S.W.3d 653, 658 (Tenn. Ct. App. 2001). "Tennessee's courts derive subject matter jurisdiction from the state constitution or from legislative acts." *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). "Courts may not exercise jurisdictional powers that have not been conferred on them directly or by necessary implication." *Id.*

Tenn. Code Ann. § 16-11-101 grants chancery courts "all the powers, privileges and jurisdiction properly and rightfully incident to a court of equity"; Tenn. Code Ann. § 16-11-102 adds subject matter jurisdiction, concurrent with the circuit courts, over all civil cases with certain exceptions. Exclusive original subject matter jurisdiction over all crimes and misdemeanors is vested in circuit courts pursuant to Tenn. Code Ann. § 16-10-102 "unless otherwise expressly provided by statute."

Criminal offenses are codified in Title 39 of the Tennessee Code; part 2 of chapter 13 governs criminal homicide. Tenn. Code Ann. § 39-13-201 defines criminal homicide and § 39-13-202 defines and prescribes the punishment for first degree murder, including death, life imprisonment without the possibility of parole, and life imprisonment. Tenn. Code Ann. § 39-13-203 prohibits defendants with an intellectual disability at the time first degree murder was committed from being sentenced to death, with "[t]he determination of whether the defendant had an intellectual disability. . . [to] be made by the court." Tenn. Code Ann. § 39-13-204 provides that sentencing for first degree murder is to be fixed by the jury in a separate sentencing hearing, and sets forth the procedures to be used in the hearing and the requirement that the judge instruct the jury orally and in writing to weigh and consider the statutory aggravating and mitigating circumstances in fixing punishment. Criminal procedure is codified in Title 40, chapter 1, which governs jurisdiction and venue. Under Tenn. Code Ann. § 40-1-108 circuit and criminal courts "have original jurisdiction over all matters not exclusively conferred by law on some other tribunal."

6

In addition to the absence of any statute vesting subject matter jurisdiction in the chancery courts to adjudicate any aspect of Tenn. Code Ann. § 39-13-203, the determination of whether the defendant had an intellectual disability at the time of the offense is a part of the prosecution and sentencing processes; the statute directs that the determination is to be made by "the court." We do not agree with Mr. [Sims] that Tenn. Code Ann. § 39-13-203 limits the criminal court's exclusive subject matter jurisdiction to the point where "the prosecution has concluded." Construed together, the relevant statutes operate as a further limitation on the chancery court's exercise of subject matter jurisdiction over this case.[7] In any event, Tenn. Code Ann. §§ 16-10-102 and 40-1-108 require that the grant of subject matter jurisdiction to the chancery court be express; there is no such express grant in the intellectual disability statute.

*Payne v. Carpenter,* M2014-00688-COA-R3-CV, ____ WL _____ (Tenn. Ct. App. Aug. 2, 2016).

## III. CONCLUSION

For the foregoing reasons, the judgment of the Davidson County Chancery Court is affirmed.

RICHARD H. DINKINS, JUDGE

---

[7] As noted in *Tennessee Downs, Inc. v. William L. Gibbons*:

Courts of equity are not constituted to deal with crime and criminal proceedings. If the law be held valid, they cannot punish the complainant for the offenses committed, or compensate those injured by his wrongful action while the hands of the officers of the law are stayed by injunction. The exercise of the jurisdiction contended for would greatly confuse and embarrass the enforcement of the police power, and, upon sound principles of public policy, it ought not to be favored.

15 S.W.3d 843, 847 (Tenn. Ct. App. 1999) (quoting *J.W. Kelly & Co. v. Conner*, 123 S.W. 622, 635, (1909)).