IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 09, 2015 Session


STATE OF TENNESSEE v. DENNIS HAUGHTON WEBBER

Appeal from the Circuit Court for Perry County
No. 2014CR4     James G. Martin, III, Judge

_____

No. M2014-02527-CCA-R3-CD – Filed November 6, 2015
_____


A jury convicted the defendant, Dennis Haughton Webber, of driving with a suspended license, a Class B misdemeanor; disorderly conduct, a Class C misdemeanor; failure to display his registration plates, a Class C misdemeanor; and failure to carry a registration, a Class C misdemeanor. The defendant on appeal challenges the jurisdiction of the trial court. We interpret his other issues to be challenges to the sufficiency of the convicting evidence. We conclude that the trial court had jurisdiction to impose its judgments on the defendant. However, we reverse the defendant's conviction for disorderly conduct because the evidence was not sufficient to support it as it was charged in the indictment. We affirm the remaining judgments of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, Case Remanded**


JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Dennis Haughton Webber, Huntingdon, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Kim Helper, District Attorney General; and Tristan Poorman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

After a traffic stop, the defendant was charged in a six-count indictment. It appears that the defendant at some point waived the right to counsel and elected to proceed pro se, although this waiver was not made part of the appellate record. Prior to trial, the defendant, acting pro se, filed various motions challenging the trial court's jurisdiction, and the trial court denied these motions. The State chose to dismiss one charge alleging that the defendant was driving on the wrong side of the road.

At trial, Deputy Curtis Mercer and Detective Robert Dillingham testified for the State. At around 9:00 or 9:30 p.m. on January 30, 2014, Deputy Mercer observed a gray Subaru Outback driving on the public highway. The vehicle swerved across the center line on several occasions. After crossing the center line, the vehicle would "dodge" back into the proper lane to avoid oncoming traffic. The vehicle also was speeding up and slowing down. Deputy Mercer testified that he observed the vehicle over two to three miles and when the erratic driving continued, he suspected that the driver was intoxicated and pulled the vehicle over. Deputy Mercer observed that the vehicle's license plate was not issued by the State of Tennessee. The license plate had written on it, "United States of America 1787 AD," accompanied by the phrase "Sovereign Citizen" and a citation to the United States Constitution and the Uniform Commercial Code.

Deputy Mercer went up to the driver's window, and he asked the defendant, who was driving, for his license, registration, and proof of insurance. The defendant cracked the window "just a little bit," handed Deputy Mercer a packet, and told Deputy Mercer that the packet was all he needed in order to drive a vehicle. The packet was a laminated paper which purported to be an "International Driving Permit" and which showed a picture of the defendant, along with a Jamaican address. Deputy Mercer ran the license plate on the defendant's vehicle. He testified that he knew it was not a valid license plate but he wanted to make sure. While in his patrol car, he asked the sheriff to assist him with the traffic stop.

Other officers arrived. Deputy Mercer determined that the license plate was not valid and returned to the vehicle. He asked the defendant to step out of the vehicle to ensure the safety of the officers. Deputy Mercer described the defendant as non-compliant because the defendant did not respond to requests for information. The defendant's vehicle was full of items, including tools, and law enforcement did not have a clear view into the vehicle. The defendant refused to exit the vehicle and kept reaching under his seat. Deputy Mercer asked him to keep his hands on the steering wheel, and the defendant would comply for a moment and then begin to reach down. Eventually,

2

three or four officers drew their guns, and the defendant exited the vehicle. Detective Dillingham testified that he was present for the traffic stop and that he later searched the defendant's driving record. He discovered that in 2002, the defendant's license had been suspended indefinitely by the State of Tennessee for failure to satisfy a citation. The license had an expiration date of May 28, 2003.

The defendant cross-examined the State's witnesses. Deputy Mercer testified that there was no evidence that the defendant was operating his vehicle for a commercial purpose, that the vehicle appeared not to be registered, and that the defendant's signature did not appear on the driving record obtained from the Department of Safety. Detective Dillingham also acknowledged that the report did not contain the defendant's signature.

The defendant attempted to challenge the trial court's jurisdiction at various points during trial. The defendant also urged the trial court to instruct the jury on the definition of "motor vehicle" given in the federal criminal code. The trial court concluded that it had jurisdiction over the proceedings, and it instructed the jury on the definition of "motor vehicle" given in Tennessee Code Annotated section 55-50-102(37) (2010).

After the evidence was closed, the trial court dismissed a charge regarding failure to provide evidence of financial responsibility under Tennessee Code Annotated section 55-12-139, because this charge was predicated on the traffic offense the State had dismissed before trial. The jury convicted the defendant of driving with a suspended license, disorderly conduct, failure to display his registration plates, and failure to carry a registration. The jury imposed a $500 fine for driving on a suspended license and a $50 fine for each of the other three offenses, and the trial court sentenced the defendant to serve ninety days in the county jail for driving on a suspended license and thirty days for each of his other violations, all to be served concurrently.

## ANALYSIS

### I. Sufficiency of the Evidence

The State has interpreted several of the defendant's arguments as challenges to the sufficiency of the evidence, and we likewise address them as sufficiency challenges. Tennessee Rule of Appellate Procedure 13(e) requires a finding of guilt to be set aside if the evidence is insufficient to support the finding of guilt beyond a reasonable doubt. In evaluating the sufficiency of the evidence, the court must determine whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002). This court will not reweigh or reevaluate the evidence, nor may it substitute its inferences for those drawn by the jury. *State v.*

3

*Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that can be drawn from it. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). A guilty verdict replaces the presumption of innocence with one of guilt, and on appeal, the defendant bears the burden of demonstrating that the evidence is insufficient to support the conviction. *State v. Cole*, 155 S.W.3d 885, 897 (Tenn. 2005). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The defendant was convicted of driving on a suspended license in violation of Tennessee Code Annotated section 55-50-504. Under Tennessee Code Annotated section 55-50-504(a)(1), a person who "drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel, . . . at a time when the person's privilege to do so is cancelled, suspended, or revoked" commits an offense. Tennessee Code Annotated section 55-50-102(56) defines a "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." A "motor vehicle" is "a vehicle . . . propelled or drawn by mechanical power used on highways or any other vehicle required to be registered under the laws of this state," excluding vehicles operated exclusively on a rail. T.C.A. § 55-50-102(37). A person whose license has been suspended may not operate a vehicle in this state under a license issued by any other jurisdiction until a new license is obtained. T.C.A. § 55-50-502(e)(1).

The evidence at trial showed that the defendant was driving a Subaru Outback on a public highway and that his driving privileges in Tennessee were suspended at the time that he did so. The defendant argues that his vehicle-related convictions should be overturned because his vehicle did not fit the definition of "motor vehicle" provided by federal law. The United States Code's definition of "motor vehicle" includes the phrase "used for commercial purposes." *See* 18 U.S.C.A. § 31(a)(6). However, the defendant's argument must fail because the defendant was not convicted in federal court of a federal offense involving a commercial vehicle. Instead, the defendant was convicted of violating laws passed by the State of Tennessee regarding the licensing of drivers and the registration of non-commercial vehicles. The laws which the defendant violated do not require that a "motor vehicle" be used for a commercial purpose; instead, the definition of "motor vehicle" in Tennessee Code Annotated section 55-50-102(37) and (56)

4

encompasses the defendant's Subaru Outback even if it was not used for commercial purposes.[1]

The defendant also appears to argue that his conviction for driving on a suspended license should not be sustained because the suspension was not for a driving offense but for failure to pay a citation. However, the State may suspend the license of an operator when sufficient evidence shows that the operator has "failed . . . to satisfy any traffic citation issued for violating any statute regulating traffic." T.C.A. § 55-50-502(a)(1)(I); *see also* T.C.A. § 55-50-502(a)(1)(H). The State introduced evidence that the defendant's license was suspended and that he drove on the public highway despite the suspension. *See State v. Thompson*, 88 S.W.3d 611, 615-16 (Tenn. Crim. App. 2000) ("[T]he suspension of a nonresident's privilege to operate a motor vehicle on the highways of this state 'does not automatically spring to life at the end of the period of ineligibility, as if the order never had been entered....'" (quoting C*olorado Dept. of Revenue, Motor Vehicle Div. v. Smith*, 640 P.2d 1143, 1145 (Colo.1982))). The evidence is sufficient to sustain the conviction.

The defendant next challenges his conviction for failure to carry a certificate of registration. Tennessee Code Annotated section 55-4-108(a) mandates that "[e]very certificate of registration shall at all times be carried in the vehicle to which it refers or shall be carried by the person driving, or in control of the vehicle, who shall display the certificate upon demand of any officer or employee of the department." The defendant appears to argue that he was not required to display his certificate of registration because he had not registered his car and it was therefore impossible for him to comply. However, the law required the defendant to register his vehicle, to display registration plates, and to carry his certificate of registration; driving the vehicle without abiding by any one of these requirements constitutes a criminal offense. *See* T.C.A. §§ 55-3-102, 55-4-108, 55-4-110; *see also State v. Booher*, 978 S.W.2d 953, 956-57 (Tenn. Crim. App. 1997); *State v. Williams*, No. W2014-00231-CCA-R3-CD, 2015 WL 1593725, at *3 (Tenn. Crim. App. Apr. 7, 2015) (rejecting the argument that the vehicle, which bore a "Sovereign Citizen" license plate, was not a "motor vehicle" unless it was registered and likewise rejecting the argument that registration was only required for commercial vehicles).

We also interpret the defendant's brief to argue that, because he did not sign various documents, including a license, registration, and the report from the Department of Safety, there was not sufficient proof that he was the driver of the vehicle. The

---

[1] For the same reasons, any claim by the defendant that there was error in the jury instructions because the trial court did not charge the jury with the definition of "motor vehicle" found in 18 U.S.C.A. 31(a)(6) must fail.

defendant's argument must fail because the question of identity lies in the sole province of the jury. *White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975). The State's witnesses testified that the defendant was the driver of the vehicle which they stopped, and it was within the province of the jury to credit the testimony of these witnesses.

In reviewing the defendant's conviction for failure to display registration plates, we note that the defendant was indicted under Tennessee Code Annotated section 55-3-102, which requires motor vehicles to be registered. However, the judgment form reflects that his conviction was under Tennessee Code Annotated section 55-4-110 which regulates the display of license plates.

The indictment in the relevant count charged that the defendant did "unlawfully drive, move, or knowingly permitted to be driven or moved upon a public road or highway, a motor vehicle of a type required to have a registration plate displayed, to wit: Sub[aru] Outback, which said registration plate was not displayed, in violation of Tennessee Code Annotated 55-3-102 . . . ."

Tennessee Code Annotated section 55-3-102, however, does not refer at all to a registration plate but instead makes it a crime to "[d]rive or move or for any owner knowingly to permit to be driven or moved on any highway any vehicle of a type required to be registered under chapters 1-6 of this title that is not registered." The statute requiring the display of a registration plate is Tennessee Code Annotated section 55-4-110, which mandates that "[t]he registration plate issued for passenger motor vehicles shall be attached on the rear of the vehicle," and that "[e]very registration plate shall at all times be securely fastened in a horizontal position to the vehicle. . . ." T.C.A. § 55-4-110(a), (b).

"[W]hen words of a charging instrument show the offense for which a person is charged, the erroneous recitation of a statute is mere surplusage and is not fatal to the charging instrument." *Cofer v. State*, No. W2006-00631-CCA-R3-PC, 2007 WL 2781718, at *7 (Tenn. Crim. App. Sept. 25, 2007) (citing *State v. Bowers*, 673 S.W.2d 887). Accordingly, a clerical error does not render an indictment void if the indictment otherwise correctly states the offense. *State v. Tyler*, No. M2009-01762-CCA-R3-CD, 2011 WL 300145, at *8 (Tenn. Crim. App. Jan. 21, 2011) (citing *Cole v. State*, 512 S.W.2d 598, 601-02 (Tenn. Crim. App. 1974)). We conclude that the indictment sufficiently put the defendant on notice of the violation with which he was charged and that the evidence was sufficient to support the conviction for failure to display a registration plate under Tennessee Code Annotated section 55-4-110.

The defendant's final conviction was for disorderly conduct. To sustain the conviction as charged in this case, the State had to prove beyond a reasonable doubt that

the defendant, "in a public place and with intent to cause public annoyance or alarm . . . [c]reate[d] a hazardous . . . condition by any act that serve[d] no legitimate purpose." T.C.A. § 39-17-305(a)(3). While the statute also makes it a violation to engaging in threatening behavior, the defendant was not charged under that subsection. *See* T.C.A. § 39-17-305(a)(1). A public place includes a highway. T.C.A. § 39-11-106(29).

The indictment specified that the hazardous condition was created by the defendant's refusal to exit his vehicle despite being ordered to do so. "Hazardous" is not defined in the statute, but is generally defined as "risky" or "dangerous." *Black's Law Dictionary* (10th ed. 2014). While by no means condoning the defendant's refusal to obey the commands of law enforcement, we conclude that the proof did not establish beyond a reasonable doubt that the defendant's refusal to exit the vehicle created a "hazardous" condition. There is no evidence in the record that the vehicle was blocking the roadway, that the vehicle contained a weapon, that law enforcement were forced to stand in traffic, that the vehicle was running, or that any other hazard was created by the defendant's refusal to exit. While Deputy Mercer's testimony that the defendant repeatedly reached under the seat could support a conviction for threatening behavior under this same statute, *see*, *e.g.*, *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994), the indictment did not encompass threatening behavior under subsection 39-17-305(a)(1). The State had the opportunity to put on proof that the defendant's refusal to exit the vehicle created a hazardous condition in some way, but the record is void of any evidence regarding what hazard was created when the defendant refused to exit the vehicle. Accordingly, we conclude that the conviction for disorderly conduct must be reversed because the evidence is insufficient to support it.

## II. Jurisdiction

The defendant on appeal continues to challenge the subject matter jurisdiction of the trial court. While the defendant's jurisdictional argument is difficult to follow, it appears to be at least, in part, based on the contention that the trial court would not have jurisdiction over him if his car were not classified as a "motor vehicle" under the statute. The defendant also appears to argue that the trial court lost jurisdiction of his case because it failed to forward his conviction to the Department of Safety under Tennessee Code Annotated section 55-50-503.[2]

---

[2] An alternative reading of the defendant's brief is that he objects to the possibility that an intervening citation for driving on a suspended license, which was apparently issued on August 12, 2005 but not prosecuted, will subject him to prosecution under Tennessee Code Annotated section 55-50-504(a)(2), prohibiting multiple violations of the prohibition on driving on a suspended license. The defendant was not charged under this subsection but under subsection (a)(1), and accordingly, we do not address this argument.

"Subject matter jurisdiction involves the court's lawful authority to adjudicate a controversy brought before it." *Johnson v. Hopkins*, 432 S.W.3d 840, 843 (Tenn. 2013). The defendant was charged with several criminal offenses. Circuit courts have original jurisdiction of crimes unless otherwise provided by statute. T.C.A. § 16-10-102; T.C.A. § 40-1-108. Accordingly, the trial court had the authority to preside over the defendant's criminal charges. *See*, *e.g.*, *State v. Keller*, 813 S.W.2d 146, 148 (Tenn. Crim. App. 1991) (concluding that circuit court had jurisdiction over defendant claiming to be a "sovereign individual" when he was charged with reckless driving); *see also State v. Goodson*, 77 S.W.3d 240, 243 (Tenn. Crim. App. 2001).

As we have noted above, the defendant's vehicle was in fact a "motor vehicle" within the meaning of the statute. In any case, a challenge to this element of the crime does not defeat the trial court's jurisdictional authority. At most, the defendant would be able to show that the evidence was insufficient to support an element of one of the crimes with which he was charged. Likewise, there is no proof before this court regarding the trial court's actions in regard to forwarding the convictions to the Department of Safety under Tennessee Code Annotated section 55-50-503. Even if the trial court had failed to forward the convictions to the Department of Safety, such a post-judgment omission would not defeat the authority of the court to impose judgments on the defendant after the jury convicted him.

Neither does the defendant's refusal to consent to the laws of the state exempt him from following them or defeat the jurisdiction of the courts should he commit a violation of state statute. *See Booher*, 978 S.W.2d at 957 (Tenn. Crim. App. 1997) ("Consent to laws is not a prerequisite to their enforceability against individuals."). Accordingly, we conclude that the trial court was not lacking in subject matter jurisdiction.

We note that the judgment form for the defendant's conviction for failing to carry his registration indicates that he is sentenced to thirty hours in jail, whereas the sentencing hearing reflects that he was sentenced to thirty days. When there is a conflict between the transcript of the sentencing hearing and the judgment document, the transcript controls. *State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Furthermore, the defendant's conviction under Tennessee Code Annotated section 55-50-504 was for driving on a suspended license, but the judgment form indicates that the conviction is for driving on a revoked license. We remand for correction of these forms.

8

**CONCLUSION**

Because the trial court had jurisdiction to impose the judgments and because the evidence was sufficient to support the convictions for driving with a suspended license, failure to display registration plates, and failure to carry a registration, we affirm these convictions.  We conclude that the evidence was insufficient to support the conviction for disorderly conduct and reverse that conviction.  We remand the case for the entry of corrected judgments.

_____
JOHN EVERETT WILLIAMS, JUDGE

9